No. 120,329

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAWN HERINGTON, Individually, and as Mother and Next Friend of B.D.J.L.,
Minor Child and Heir-at-Law of Troy Lanning II, Deceased, and as
Special Administrator of the Estate of Troy Lanning II,
*Appellant*,

v.

CITY OF WICHITA and CITY OF WICHITA POLICE DEPARTMENT
OFFICER RANDY WILLIAMSON, Individually,
*Appellees*.

SYLLABUS BY THE COURT

The res judicata rule adopted in *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 403-04, 949 P.2d 602 (1997), and endorsed in *Rhoten v. Dickson*, 290 Kan. 92, Syl. ¶ 7, 223 P.3d 786 (2010), is considered and applied to affirm a district court judgment for the defendants on plaintiff's state law claims that were originally filed in federal court and dismissed there without prejudice for lack of jurisdiction.

Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed December 4, 2020. Affirmed.

*James A. Thompson*, of Malone, Dwire & Thompson, LLC, of Wichita, for appellant.

*J. Steven Pigg* and *Samuel A. Green*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before ATCHESON, P.J., MALONE, J., and DANIEL D. CREITZ, District Judge, assigned.

1

PER CURIAM: Wichita Police Officer Randy Williamson fatally shot Troy Lanning II after pursuing him in a high-speed car chase and then on foot. Dawn Herington, Lanning's mother, filed an action for damages against Williamson and the City of Wichita in the United States District Court for the District of Kansas alleging violations of Lanning's civil rights under federal law and several state law tort claims. Herington filed the action in her dual capacity as an heir of Lanning and as the special administrator of his estate. The federal district court granted summary judgment to Williamson on the federal claims based on qualified immunity and to the City on the federal claims based on several other grounds going to their merits. Having done so, the district court dismissed the state law claims for lack of jurisdiction and, therefore, without ruling on their merits. See *Herington v. City of Wichita*, No. 6:14-cv-01094-JTM, 2017 WL 76930, at *13 (D. Kan. 2017) (unpublished opinion).

Herington refiled the state claims in Sedgwick County District Court in this case. Applying res judicata as the Kansas Supreme Court has defined that rule of preclusion, the district court granted summary judgment to Williamson and the City simply because those claims had been asserted in the federal action and were later dismissed without any consideration of their validity. As a result, Herington has been denied relief on those state law claims even though neither the federal court nor the district court ever considered their merits.

We are obligated to apply res judicata the way the Kansas Supreme Court has outlined the doctrine in *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 403-04, 949 P.2d 602 (1997), and later in *Rhoten v. Dickson*, 290 Kan. 92, Syl. ¶ 7, 223 P.3d 786 (2010). See *Majors v. Hillebrand*, 51 Kan. App. 2d 625, 629-30, 349 P.3d 1283 (2015) (Court of Appeals required to follow Supreme Court precedent absent some indication Supreme Court is departing from its previous position). The preclusion rule that originated in *Stanfield* prohibits a plaintiff from pursuing state law claims in the Kansas district courts when a federal court has dismissed them for lack of jurisdiction in

2

conjunction with entering a judgment on the merits for the defendant on all of the federal claims. *Rhoten*, 290 Kan. at 112. And that rule applies here, given the procedural progression of the federal case and Herington's refiling of the state law claims in this case.

The *Stanfield* formulation of res judicata appears to be unique to Kansas and effectively deprives Herington of a hearing on the merits of the state law claims she has pursued from the beginning of her legal battle merely because the federal court declined to consider them at all. Conventional res judicata principles would have permitted Herington to go forward with those claims in this case, since the federal court dismissed them without adjudicating their merits. See *Jackson Trak Group v. Mid States Port Authority*, 242 Kan. 683, 690-91, 751 P.2d 122 (1988); 18 Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 4402 (2020). Neither we nor the district court can pick and choose what rule of res judicata to apply. The district court properly applied *Stanfield* and *Rhoten* in entering judgment for the defendants based on res judicata.

Affirmed.

* * *

ATCHESON, J., concurring: The Kansas Supreme Court fashioned an eccentric and exceedingly unfair rule of res judicata in *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 403-04, 949 P.2d 602 (1997), and perpetuated that eccentricity and unfairness in *Rhoten v. Dickson*, 290 Kan. 92, Syl. ¶ 7, 223 P.3d 786 (2010). On the whole, judicially created doctrines, such as res judicata, ought to avoid both remarkable oddity and patent inequity. In every instance, however, they should be shaped by considerations of basic fairness. As this case illustrates, the *Stanfield* iteration of res judicata as a matter of federal common law isn't fair, and there is no public policy tradeoff for that lack of

3

fairness. In short, *Rhoten* and *Stanfield* deny plaintiffs their proverbial day in court for no good reason.

As I discuss, the path to and the reasoning underlying *Stanfield* is suspect. In that case, the court abandoned without discussion the res judicata principles set out in *Jackson Trak Group v. Mid States Port Authority*, 242 Kan. 683, 690-91, 751 P.2d 122 (1988)—principles that conform to the customary understanding of claim preclusion in both federal and state law. Those conventional rules of res judicata would have allowed Dawn Herington to go forward with this case in the district court. The court then replicated the departure from orthodox doctrinal notions of res judicata in *Rhoten*, based primarily on an adherence to the *Stanfield* decision as settled law and the force of stare decisis. But, as I explain, stare decisis ought to yield, given the misconceived application of res judicata in *Stanfield* that breaks with federal law and general preclusion principles set out in *Jackson Trak* and an array of other contrary authority. The *Stanfield* rule likewise undermines a foundational objective of the civil litigation process to decide legal disputes on their merits whenever possible. And the rule offers no tangible benefit to the process offsetting that destructive effect.

Apart from being peculiar and something short of intrinsically just, the *Stanfield* version of res judicata is likely unconstitutional. By denying plaintiffs a forum for review of state law claims dismissed for lack of jurisdiction in federal court, the rule undercuts the purpose of 28 U.S.C. § 1367 (2016), governing federal courts' supplemental jurisdiction over state law claims, and presumably runs afoul of the Supremacy Clause of the United States Constitution as a result. The Supremacy Clause doctrine of conflict preemption negates the *Stanfield* rule of res judicata because it imposes a substantial obstacle to the full operation of 28 U.S.C. § 1367.

The Kansas Supreme Court ought to consider taking this opportunity to reexamine what was done nearly 25 years ago in *Stanfield* and to realign this state's application of

4

res judicata with conventional preclusion principles. Herington and similarly situated plaintiffs should be afforded a judicial forum to have their state law claims heard on the merits. I offer no opinion on the merits of Herington's claims—only my sentiment that she has been figuratively barred at the courthouse door because of a rule that inexplicably breaks with well-settled law and advances no discernible judicial or public policy.

*Factual and Procedural Progression of This Litigation*

The factual and procedural setting before us is remarkably straightforward and presents a recurrent litigation pattern involving civil cases with both state and federal claims. While on duty, a Wichita police officer shot and killed Troy Lanning II. The precise circumstances are irrelevant to the legal issue on appeal. Herington filed federal civil rights claims under 42 U.S.C. § 1983 (2016) and state law tort claims against the City of Wichita and the police officer in the United States District Court for the District of Kansas. Again, the precise theories of liability are irrelevant. The federal district court granted summary judgment to the City and the officer on the merits of the civil rights claims, leaving only the state law claims unresolved. Consistent with 28 U.S.C. § 1367, the federal district court dismissed them without prejudice for lack of jurisdiction—never considering their underlying validity.

Herington refiled the state law claims in Sedgwick County District Court. The City and the officer then faced the same unresolved claims the federal court declined to consider and dismissed for lack of jurisdiction. But based on the Kansas Supreme Court's unique view of res judicata, the district court entered judgment for the City and the officer, dismissing those claims without regard to their merits. So as Kansas law now stands, Herington will never get a judicial determination on whether the City and the police officer committed torts causing the wrongful death of her son.

We are constrained to apply the rule of res judicata the court created in *Stanfield* and continued in *Rhoten*. For that reason (and that reason alone), I necessarily join in the per curiam opinion affirming the district court's judgment for the City and the police officer. As my comments suggest, I do so unhappily.

*Conventional Res Judicata Doctrine*

Res judicata is a judge-made rule that prevents one party from serially suing a second party for claims that have already been decided on their merits in an earlier action or for related claims that could have been but were not asserted in that action. See *Jackson Trak Group*, 242 Kan. at 690-91; *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 259, 261 P.3d 943 (2011) ("[R]es judicata prohibits a plaintiff from filing a successive suit against a defendant based either on factually related claims omitted from an earlier suit or on claims actually asserted and lost on a final judgment on the merits in the earlier suit."); *Pierson Sand and Gravel, Inc. v. Keeler Brass Company*, 460 Mich. 372, 380, 596 N.W.2d 153 (1999) ("[T]he doctrine of res judicata applies, except in special cases, in a subsequent action between the same parties and 'not only to points upon which the court was actually required by the parties to form an opinion and pronounce a judgment, but to every point which properly belonged to the subject of litigation, and which the parties, exercising reasonable diligence, might have brought forward at the time.'"); 18 Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 4402 (2020). Res judicata, then, keeps a plaintiff from harassing a defendant with a successive action relitigating claims that have been already decided adversely to the plaintiff or asserting for the first time factually related claims the plaintiff withheld from an earlier action, so they were never presented for adjudication. Wright, Miller, and Cooper explain the dual preclusive components of res judicata this way: "The first is the effect of foreclosing any litigation of matters that never have been litigated, because of a determination that they should have been advanced in an earlier suit." And

6

"[t]he second is the effect of foreclosing relitigation of matters that have once been litigated and decided." Federal Practice and Procedure: Jurisdiction 3d § 4402.

In its conventional form—whether applied as a matter of federal law or state law—res judicata encourages (really compels) parties to litigate all of their claims in a single action and then gives continuing legal effect between the litigants to a merits judgment on those claims in that action. The judgment also bars later litigation of factually related claims that could have been sued on in that case. The rule promotes adjudicatory efficiency and finality. But it does so with the recognition the judicial process has run its course in addressing and deciding the claims that were or could have been presented for determination. In short, res judicata affords parties who believe they have been aggrieved the proverbial one bite of the apple in seeking legal relief. But it is supposed to be a *full and fair* bite.

Accordingly, courts have long recognized that when a plaintiff's claim is dismissed in one action for reasons other than its merits, res judicata does not bar its litigation in a later action. The recognition isn't so much an exception to res judicata as a focused emphasis on the requirement for a merits-based determination to trigger preclusion. A dismissal for lack of jurisdiction does not support res judicata, since the dismissal rests on the authority of the court to hear the asserted claim in the first place rather than on the merits of the claim. The court in *Jackson Trak* outlined this limitation: "[A] judgment is not res judicata as to any matters which a court expressly refused to determine, and which it reserved for future consideration, or which it directed to be litigated in another forum or in another action." 242 Kan. at 691. The United States Supreme Court has similarly recognized that a state law claim dismissed in federal court for lack of jurisdiction should then be litigated in an appropriate state court. See *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726-27, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). In their treatise, Wright, Miller, and Cooper point out that dismissal for lack of jurisdiction in one judicial forum should not be transformed into a res judicata bar to litigation in a forum with

7

jurisdiction. Federal Practice and Procedure:  Jurisdiction 3d § 4402 (dismissal in federal court for lack of subject-matter jurisdiction should not bar action on same claim in forum with jurisdiction); § 4412 (federal court's declination of supplemental jurisdiction over state law claims should not preclude state court action); § 4436 & n.53 ("Discretionary refusal to exercise supplemental jurisdiction likewise does not preclude a subsequent action on state-law claims in a state court."). Both Fed. R. Civ. P. 41(b) and K.S.A. 2019 Supp. 60-241(b)(1) state that the dismissal of an action or a claim for lack of jurisdiction is not an adjudication on the merits.

The rules of res judicata recognized in both Kansas law in *Jackson Trak* and in federal law as set out in *United Mine Workers* and applied since are united in recognizing that a claim dismissed for lack of jurisdiction is not an adjudication on the merits triggering claim preclusion. So the dismissed claim could then be filed and litigated on its merits in a judicial forum with jurisdiction. Case authorities recognizing that aspect of res judicata are legion. See *United Mine Workers*, 383 U.S. at 726-27 (if federal court dismisses federal claims supplying jurisdiction, then state claims "may be dismissed without prejudice and left for resolution to state tribunals"); *International Energy Ventures Management, LLC v. United Energy Group, Ltd.*, 818 F.3d 193, 202 & n.25 (5th Cir. 2016) (dismissal of state law claims for lack of jurisdiction is without prejudice, so plaintiff not barred by res judicata from pursuing them in state court); *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Mississippi*, 143 F.3d 1006, 1013 (5th Cir. 1998) ("[P]rinciples of claim preclusion do not bar the plaintiffs from pursuing their claims in state court [because a] dismissal under Rule 12[b][1] [for lack of subject matter jurisdiction] is not on the merits, and therefore cannot have a res judicata effect."); *Guerrero v. California Dept. of Corrections and Rehabilitation*, 28 Cal. App. 5th 1091, 1107 n.15, 239 Cal. Rptr. 3d 726 (2018); *Lucas v. County of Los Angeles*, 47 Cal. App. 4th 277, 286, 54 Cal. Rptr. 2d 655 (1996) ("A federal court's discretionary refusal to exercise pendent jurisdiction over a state claim does not bar further litigation of the state claim in state court."); *Herbin v. Hoeffel*, 806 A.2d 186, 193 (D.C. App. 2002) (federal

8

district court's decision to decline supplemental jurisdiction over state claims does not preclude state court action on those claims); *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 393, 757 N.E.2d 471 (2001) ("By declining jurisdiction over the plaintiff's pendent state claim, dismissing it for lack of jurisdiction, the [federal] district court in effect reserved plaintiff's right to pursue the matter in state court." Res judicata "does not apply."); *Shandelmeier-Bartels v. Chicago Park District*, 389 Ill. Dec. 451, 460, 26 N.E.3d 541 (2015); *Pierson Sand and Gravel*, 460 Mich. at 382; *Jensen v. Champion Window of Omaha*, 24 Neb. App. 929, 935-36, 900 N.W.2d 590 (2017); *Neuman v. Echevarria*, 171 A.D.3d 767, 768, 97 N.Y.S.3d 203 (2019); *Stylianou v. Incorporated Village of Old Field*, 23 A.D.3d 454, 457, 805 N.Y.S.2d 573 (2005) ("Where a federal court, upon dismissing all federal law causes of action against a defendant, also dismisses pendent state law claims against that defendant for want of subject matter jurisdiction, a plaintiff is not barred from commencing . . . an action in state court based on the same set of transactions or occurrences."); *Ohio Kentucky Oil Corp. v. Nolfi*, 5 N.E.3d 683, 691 (Ohio Ct. App. 2013); *Whitesell v. Newsome*, 138 S.W.3d 393, 396 n.2 (Tex. Ct. App. 2004) ("[A] dismissal [in federal court] for lack of subject-matter jurisdiction is not a ruling on the merits and therefore cannot have res judicata effect and bar plaintiffs from pursuing claims in state court."). Those cases are illustrative and not exhaustive of the authority for this settled principle of res judicata.

Accordingly, as res judicata is commonly understood and as it was applied in Kansas before *Stanfield*, the federal district court's dismissal of Herington's state tort claims without prejudice for lack of jurisdiction after granting summary judgment to the defendants on the merits of her federal civil rights claims would not have created a preclusive bar to this case. In plain terms, Herington would have been entitled to seek a decision in the district court from a judge or jury on the validity of her claims. But the idiosyncratic res judicata rule of *Stanfield* denies Herington that opportunity—so she will never get a ruling up or down on the merits of those claims and the City and the police

9

officer will escape a substantive accounting on those tort claims for the conduct that led to Lanning's death.[1]

[1]This case turns on res judicata or claim preclusion and, thus, the legal theories or grounds for liability arising from the transaction or operative facts bearing on the circumstances creating the harm or injury. There is no dispute that the state law claims Herington pursued in federal court and refiled in this action arose from a single transaction for res judicata purposes. The transaction, however, extends beyond the immediate interaction between the police officer and Lanning leading up to the fatal shooting and encompasses allied circumstances such as the City's care in hiring the officer and then supervising him.

This appeal does not concern the complementary doctrine of collateral estoppel or issue preclusion. Issue preclusion prohibits a party from relitigating factual determinations necessary to a judgment on the merits in one action in a later action in which the same issue arises, even though the legal claims may be different. Kansas applies issue preclusion when the actions involve the same parties or litigants in privity with them. See *Estate of Belden*, 46 Kan. App. 2d at 265. The district court did not rely on issue preclusion in granting summary judgment to the defendants in this case.

Having outlined the conventional treatment of res judicata in both state and federal law, I next explain the migration from that accepted doctrinal approach, as described in *Jackson Trak* and elsewhere, to the decidedly odd preclusion rule that now governs. The present rule serves no discernible judicial or public policy and, so far as I can tell, has turned Kansas into an outlier of one when it comes to res judicata.

*The Strange Life and Times of* Stanfield *and* Rhoten

With respect to res judicata, *Stanfield* presented a legal circumstance comparable to Herington's position here, although the underlying facts bear no similarity. Stanfield had a longstanding dispute with Osborne Industries over royalty and trademark rights arising from his design of a heated pad for pig birthing or farrowing. Pertinent here, Stanfield sued the company in federal court for trademark violations under the federal Lantham Act and for state law claims for slander, disparagement, and misappropriation of

his name in marketing some of its products. The federal district court ruled against Stanfield on the merits of the Lantham Act claims and dismissed the state claims for lack of jurisdiction. Stanfield then filed an action in Osborne County District Court asserting the state claims that had been dismissed in federal court. The district court ruled for the company, and the Kansas Supreme Court exercised its authority to hear Stanfield's appeal, bypassing this court.

The court recognized that the federal common law of res judicata governed the preclusive effect of the federal court's dismissal of Stanfield's state law claims for lack of jurisdiction. And it also recognized that the federal law essentially matched Kansas law outlining res judicata. 263 Kan. at 396.

The court identified the necessary components of res judicata as: (1) an earlier action that has resulted in a judgment on the merits; (2) the parties in the earlier action and the current action must be the same or in privity; and (3) the two actions "'must be based on the same cause of action [or claim].'" 263 Kan. at 397-98 (quoting *Clark v. Haas Group*, *Inc.*, 953 F.2d 1235, 1236 [10th Cir. 1992]). That is a generic statement of res judicata covering the typical situation in which the plaintiff has filed a single claim for relief or multiple claims for relief, and the trial court has entered an adverse judgment on the merits of everything. Res judicata, as it is universally understood, would preclude the plaintiff from filing another action raising new claims based on the same occurrence or transaction or reasserting the claims that had already been decided on the merits.

The general statement, however, does not specifically address an action consisting of multiple claims for relief, some of which the trial court decides against the plaintiff on the merits and some of which it dismisses for lack of subject matter jurisdiction. And, as I have explained, that sort of mixed disposition is commonly understood to present different preclusion considerations that, in fairness, permit the plaintiff to pursue the dismissed claims in a forum that has jurisdiction. The United States Supreme Court

11

recognized as much in describing the application of pendant jurisdiction in *United Mine Workers*. The Court explained that when a federal court dismisses the federal claims supplying its jurisdiction, the related state claims should be dismissed without prejudice, thereby permitting the plaintiff to file them in state court. 383 U.S. at 726-27. The concept has been embodied in 28 U.S.C. § 1367, codifying pendant jurisdiction as supplemental jurisdiction and recognizing the state law claims for relief to be different from the federal claims for relief supplying original jurisdiction in the federal courts. Similarly, *Jackson Trak* explained the nuanced application of res judicata required when some claims for relief have been dismissed for lack of jurisdiction and others have been decided on the merits. 242 Kan. at 690-91.

The *Stanfield* decision fails to thoroughly assess those different fact patterns. The decision compounds the oversight by superimposing the test for a transaction that may be considered a single case or controversy over which a federal court can then exercise its jurisdiction conferred through Article III of the United States Constitution. As described in *United Mine Workers*, a case or controversy—a justiciable transaction—consists of a common nucleus of operative facts giving rise to a set of legal injuries or wrongs. 383 U.S. at 725. The *Stanfield* decision then characterizes the factual transaction as a "claim" and uses that "claim" to define the scope of res judicata preclusion regardless of how many independent claims for relief a plaintiff has asserted arising from the factual transaction.

But "claim" as a term to describe a transaction composing a case or controversy is not the exclusive standard for defining res judicata. Again, *United Mine Workers* makes that clear. 383 U.S. at 725 (referring to "plaintiff's claims" encompassed within transaction and differentiating a federal claim supplying jurisdiction from factually related state claims that collectively form "the entire action before the court compris[ing] but one constitutional 'case'"). Moreover, the direction in *United Mine Workers* that state law claims dismissed in federal court for lack of jurisdiction could then be pursued in

state court would be nothing more than the pronouncement of an empty exercise if they were immediately subject to dismissal on res judicata grounds. Reading *United Mine Workers* that way is both improbable and poor jurisprudence. See *Ohio v. Roberts*, 448 U.S. 56, 74, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980) ("The law does not require the doing of a futile act[,]" so the State was not obligated to attempt to procure the presence of a witness who had died.); *Anderson v. Dugger*, 130 Kan. 153, 156, 285 P. 546 (1930) ("The law does not require the performance of a futile or useless act."); *Allen v. Attorney Gen. of State of Me.*, 80 F.3d 569, 573 (1st Cir. 1996) ("The law, after all, should not require litigants to engage in empty gestures or to perform obviously futile acts.").

The "transaction" or claim (in that sense) a plaintiff sues on in an action does define the boundaries of res judicata precluding *new* claims for relief that plaintiff asserts in a second action against the same defendant. If the new claims arose out of the transaction and could have been brought in the first action, res judicata would preclude their litigation in a successive action. But conventional res judicata principles do not bar claims for relief the plaintiff actually presented in the first action that a court has dismissed for lack of jurisdiction. Those claims may be asserted in a second action in a judicial forum having jurisdiction. The *Stanfield* decision rejected that fundamental doctrine of res judicata without any direct explanation why, even though Stanfield apparently made the point. 263 Kan. at 402-03.

The *Stanfield* decision, however, cites the Restatement (Second) of Judgments §§ 24 and 25 (1980) and *Mattson v. City of Costa Mesa*, 106 Cal. App. 3d 441, 164 Cal. Rptr. 913 (1980), as supporting authority for its refashioning of traditional res judicata principles into a rule barring the litigation of state law claims previously dismissed in federal court for lack of jurisdiction. *Stanfield*, 263 Kan. at 403-04. Neither source does what *Stanfield* suggests.

In Restatement (Second) of Judgments § 24, the authors define "claim" for purposes of preclusion rules in terms of a "transaction" comparable to the common nucleus of operative facts recognized in *United Mine Workers* and the case-or-controversy test in 28 U.S.C. § 1367. Restatement (Second) of Judgments § 24, comments a, b. The definition, in turn, supports the Restatement's position that a plaintiff may not file a second action against the same defendant asserting new claims arising from the transaction or claim litigated in an earlier action. See Restatement (Second) of Judgments § 19; comment b(b) (involuntary dismissal); Restatement (Second) of Judgments § 25 (Restatement authors characterize § 25 as expressing "[e]xemplifications" of § 24). But the authors explicitly limit those rules with a series of "exceptions" in Restatement (Second) of Judgments § 26. One of the exceptions carves out claims for relief a plaintiff has asserted against a defendant that a court then dismisses for lack of jurisdiction—the plaintiff may pursue those claims for relief in a new action filed in a court with jurisdiction. The authors state the exception this way:

> "(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
>    . . . .
>
>    (c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief." Restatement (Second) of Judgments § 26(1)(c).

The Restatement "exception" governing those claims for relief a plaintiff has asserted against a defendant and are then dismissed other than on their merits captures a core principle of res judicata jurisprudence. But the *Stanfield* decision never mentions Restatement (Second) of Judgments § 26 or the recognition of that rule in case authority, including *United Mine Workers* or *Jackson Trak*. Recognition of Restatement (Second) of

14

Judgments § 26(1)(c) would have called for a different outcome in *Stanfield*, just as it would here.[2]

[2]The *Stanfield* decision does quote part of comment c to Restatement (Second) of Judgments § 24 that suggests the rule stated in that section is something less than ironclad. 263 Kan. at 401. In comment c, the Restatement authors explain that "a judgment based on the act *usually* prevents the person from maintaining another action for any of the harms not sued for in the first action." The comment alludes to some circumstances in which a plaintiff might be able to assert *new* claims in a successive action and inferentially flags the possibility that claims actually brought in one action could be maintained in a later action. The authors, of course, catalogue just those sorts of circumstances in Restatement (Second) of Judgments § 26. The comments to § 24 make multiple references to the exceptions in § 26. The failure of the *Stanfield* decision to even acknowledge, let alone discuss § 26, lends an air of incompleteness to its analysis and its conclusion.

The *Mattson* decision from the California Court of Appeals does not support the result in *Stanfield*. In that case, Mattson sued in federal court for federal civil rights violations and for state law negligence based on his arrest. The federal court dismissed the state-law negligence claims for lack of jurisdiction. Mattson filed a negligence action in state court, but he served none of the defendants and took no other action in that case. Meanwhile, Mattson elected to go to trial in federal court on his civil rights claims and received an adverse jury verdict. He then served the defendants in the state action some two years after it had been filed. The state court dismissed the case. And the California appellate court affirmed, finding Mattson voluntarily and impermissibly split his cause of action. The court concluded Mattson elected to go to trial in federal court on the federal claims alone, effectively splitting off the state negligence claims that had been dismissed. And he was bound by that election, so he could not hold back the state claims by parking them in a dormant action in state court. The court suggested that had Mattson wished to litigate his state claims, he should have moved to dismiss the federal action without prejudice and then refiled both the federal and state claims in state court. The appellate court found Mattson's subterfuge to be impermissibly manipulative and an undue burden on the judicial process. *Mattson*, 106 Cal. App. 3d at 453-54.

Neither Stanfield nor Herington engaged in anything comparable. They did not choose to continue to litigate their federal claims to judgment in federal court only after the dismissal of their state law claims. In each instance, the federal court disposed of all of the claims in a single order—entering an adverse judgment on the merits of the federal claims and dismissing the state law claims for lack of supplemental jurisdiction. Neither made an election to litigate their federal claims alone, and they both diligently pursued their state law claims. The California appellate courts have repeatedly recognized the common rule of res judicata that would have allowed Stanfield and Herington to pursue their state law claims in state court. See *Guerrero*, 28 Cal. App. 5th at 1107 n.15; *Harris v. Grimes*, 104 Cal. App. 4th 180, 188, 127 Cal. Rptr. 2d 791 (2002); *Lucas*, 47 Cal. App. 4th at 286; *Allford v. Barton*, No. F074780, 2019 WL 1147624, at \*14 (Cal. App. 2019) (unpublished opinion). They either distinguish *Mattson* factually because the plaintiff there elected to go forward in federal court or reject its holding outright. See *Guerrero*, 28 Cal. App. 5th at 1106-07 (distinguishing *Mattson*); *Harris*, 104 Cal. App. 4th at 188-89 (rejecting *Mattson*).

In sum, the *Stanfield* decision's treatment of res judicata lacked any anchor in the law. The *Stanfield* rule was premised on an incomplete reading of the Restatement (Second) of Judgments; the treatise contains a provision that explicitly negates the rule. And the one California appellate case *Stanfield* identified as persuasive authority actually is materially (and rather obviously) distinguishable. The California courts endorse a res judicata rule that would have permitted Stanfield and Herington to pursue their state law claims in state court. So does every other state except Kansas, as far as I can tell.

In 2010, the Kansas Supreme Court specifically considered whether the *Stanfield* decision should be overruled and declined to do so. *Rhoten*, 290 Kan. at 93. In that case, Danielle Rhoten was a passenger in a vehicle involved in a collision in Topeka ostensibly caused by a police pursuit. She suffered what were characterized as serious injuries.

16

Rhoten filed an action in federal district court alleging federal civil rights violations against the City of Topeka and the police officer initiating the pursuit and state law negligence claims against the officer, the City, and the driver of the pick-up truck that struck the vehicle she was in.

As with *Stanfield* and here, the federal court ruled against Rhoten on the merits of her federal claims and dismissed the negligence claims without prejudice for lack of jurisdiction. Rhoten then filed an action in Shawnee County District Court reasserting the negligence claims. Relying on *Stanfield*, the district court entered judgment against Rhoten on res judicata grounds. Rhoten's appeal made its way to the Kansas Supreme Court, where the legal worth of *Stanfield* became a central issue.

In *Rhoten*, the court largely recited the reasoning of the *Stanfield* decision without examining its underpinnings or comparing it to conventional res judicata principles recognized elsewhere or in *Jackson Trak*. Based on that review, the *Rhoten* court pronounced the *Stanfield* decision sound, while recognizing its application of res judicata deprived Rhoten of any opportunity to have her negligence claims considered on their merits. The court acknowledged: "[T]his outcome does seem counterintuitive." *Rhoten*, 290 Kan. at 112. But the court held that stare decisis considerations were sufficiently strong to warrant preserving the *Stanfield* rule. *Rhoten*, 290 Kan. at 112.[3]

[3]In looking at the federal law of res judicata, the *Rhoten* court considered whether Rhoten had "a full and fair opportunity" to litigate her claims in federal court. 290 Kan. at 110-11. To be barred by res judicata or collateral estoppel in an action, a party must have been afforded a fair opportunity to have litigated the relevant matters in an earlier action. See *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481-82 & n.22, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982). This is often treated either as a necessary condition precedent for claim preclusion or as an exception that limits claim preclusion in particular cases. And it is frequently assumed in a given case without discussion. In *Kremer*, the Court recognized the opportunity to litigate must comport with constitutional due process requirements to be full and fair. 456 U.S. at 481-83. Courts have identified three factors that may bear on the sufficiency of the opportunity to litigate in an earlier action: (1) The extent of procedural limitations in the earlier proceeding; (2) the party's

17

incentive to fully litigate the issue in that proceeding; and (3) litigation limitations resulting from the parties' nature or relationship. *Rhoten*, 290 Kan. at 110-11; see *Johnson v. Spencer*, 950 F.3d 680, 709-10 (10th Cir. 2020) (res judicata); *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1339-40 (Fed. Cir. 2003) (collateral estoppel).

The "full and fair opportunity" requirement is not in play here. Nothing suggests Herington received something less than the constitutional process due her in the federal case. She doesn't argue otherwise. Herington has been disadvantaged because of the peculiar rule of res judicata fashioned in *Stanfield*, which presupposes a fair hearing in federal court.

The adherence to precedent embodied in stare decisis is a cornerstone of the judicial process, since it imposes stability and predictability in the law and judicial decision-making. Individuals, businesses, and governmental entities may manage their general affairs in reliance on the law as the courts have declared it to be. And litigants may expect their legal disputes will be decided in a way consistent with rulings in similar cases. See *McCullough v. Wilson*, 308 Kan. 1025, 1035-36, 426 P.3d 494 (2018); *State v. Sherman*, 305 Kan. 88, 107-08, 378 P.3d 1060 (2016). At the same time, however, stare decisis is not an inexorable command for rigid adherence to case precedent. A court may depart from its earlier decisions if it is persuaded those decisions were wrong or have ceased to be sound because of changing conditions and the benefits of a new rule will outweigh the harms in modifying or rejecting the old rule. *McCullough*, 308 Kan. at 1036; *Sherman*, 305 Kan. at 108.

The *Stanfield* decision's res judicata rule and *Rhoten*'s acceptance of that rule offer a prime example of when stare decisis should yield—here in favor of a demonstrably better and fairer preclusion principle that would allow Herington to litigate her state law claims on their merits. First, the *Stanfield* rule seems to be the product of erroneous reasoning in the sense that the key authorities on which it is based do not support it. The decision also presents its outcome as the obvious conclusion to be drawn from more general legal statements about preclusion doctrines, as if the outcome aligned with the

18

settled application of res judicata across the judicial system. To the contrary, the formulation of res judicata presented in *Stanfield* marks a gross departure from the mainstream and seems to be singularly anomalous. See Comment, *Kansas' Rationale is Dust in the Wind: Why the Dismissed Supplemental Claim Exception to the General Rule of Claim Preclusion is Necessary*, 50 Washburn L.J. 511, 525-26 (2011).

I have found no federal authority or cases from other states citing *Stanfield* or *Rhoten* favorably, let alone adopting a comparable res judicata rule. One appellate case cited *Stanfield* negatively. The Ohio Court of Appeals dismissed a litigant's reliance on *Stanfield* with the observation the case offered "a minority position" on res judicata and identified no other adherents of that position. *Ohio Kentucky Oil Corp.*, 5 N.E.3d at 690. So if the *Stanfield* court simply intended to apply conventional claim preclusion principles fashioned in federal law, it erred or at least failed to do what it intended. The outcome was just the reverse of what accepted res judicata principles embodied in both federal and state law would call for.

A state appellate court, of course, can chart a pioneering trail in the common law. See *Arizona v. Evans*, 514 U.S. 1, 8, 115 S. Ct. 1185, 131 L. Ed. 2d 34 (1995) (state courts "are free to serve as experimental laboratories"). On such an occasion, the court might be expected to say as much as a prelude or a coda to the experiment. See, e.g., *State v. Henderson*, 208 N.J. 208, 217-20, 27 A.3d 872 (2011); *Dillon v. Legg*, 68 Cal. 2d 728, 747-48, 441 P.2d 912 (1968). The *Stanfield* court did not hint at an innovative objective. State courts understandably tend to shy away from unique interpretations of federal law, although they are strictly bound only by pronouncements of the United States Supreme Court. See *Evans*, 514 U.S. at 8; *State v. Tatro*, 310 Kan. 263, 272, 445 P.3d 173 (2019) (United States Supreme Court authority binding); *State v. Thompson*, 284 Kan. 763, 801, 166 P.3d 1015 (2007) (federal circuit authority persuasive). Even if the *Stanfield* court quietly harbored an inventive design, the product may be viewed as a failure on that score, as well. If a court sets about inventing a better common-law

mousetrap, other courts figuratively ought to beat a path to the courthouse door. Some two decades on, there has been no embrace whatsoever of *Stanfield* or *Rhoten* as a model for res judicata law.

That might have something to do with the out-of-the-wayness of the Kansas appellate courts. We aren't necessarily thought of as jurisprudential trendsetters. But, more likely, the sheer idiosyncrasy of the rule weighs against its wide embrace. Nothing in the general principles of federal preclusion law ineluctably leads to the holdings in *Stanfield* and *Rhoten*. Other courts have consistently applied federal law otherwise on the particular point. And the striking unfairness the *Stanfield* rule demands may give pause to other courts looking at it.

As applied to Herington, the rule prevents her from receiving a merits hearing on her original state law claims in any judicial forum. The result runs counter to the essential purpose of the civil litigation process in resolving disputes by determining whether a party asserting a legal harm has, in fact, suffered a remediable wrong and, if so, to by ordering appropriate relief. The courts disfavor procedural obstacles thwarting that objective. *Degen v. United States*, 517 U.S. 820, 828, 116 S. Ct. 1777, 135 L. Ed. 2d 102 (1996) ("The dignity of a court derives from the respect accorded its judgments [and,] [t]hat respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits."); *State v. Roat*, 311 Kan. 581, 591, 466 P.3d 439 (2020) ("Litigants must have some effective means to vindicate injuries suffered to their rights without being shut out of court."); *Fischer v. DeCarvalho*, 298 Kan. 482, 500, 314 P.3d 214 (2013) ("[T]he law prefers that cases be decided on their merits rather than on technical compliance with procedural rules."); *Malot v. Dorado Beach Cottages Associates*, 478 F.3d 40, 43 (1st Cir. 2007) ("Nevertheless, we must fairly balance the court's venerable authority over case management with the larger concerns of justice, including the strong presumption in favor of deciding cases on the merits.").

Common-law rules should be shaped to facilitate the resolution of legal disputes on the merits whenever reasonably possible. The *Rhoten* court's characterization of the preclusion rule it endorsed and applied as "counterintuitive" precisely because it denies a plaintiff a merits adjudication ought to strike a clarion cautionary note. Courts make the common law, and they should do so in the service of the basic purpose of the judicial process. What *Stanfield* and *Rhoten* accomplish simply undermines the process. The counterintuition of the result is a red flag flying over a badly miscast approach to preclusion principles.[4]

[4] The Kansas Supreme Court recently affirmed mootness to be a prudential doctrine that should be cautiously invoked when it fences out parties in the name of judicial efficiency. *Roat*, 311 Kan. at 590-92. The court explained that mootness, as judge-made doctrine imposing a procedural barrier, should be carefully balanced against the fundamental purpose of the judicial process in that "[l]itigants must have some effective means to vindicate injuries suffered to their rights without being shut out of court." 311 Kan. at 591. Mootness and res judicata share common attributes as judicially created rules promoting efficiency and ostensibly avoiding the needless determination of legal disputes on their merits. Mootness avoids rulings that would not affect the parties' present legal relationships. Res judicata avoids rulings on claims that were presented and decided on their merits or that could have been presented but were not.

To be sure, in some situations, merits determinations may be forfeited to advance necessary fairness and efficiencies in civil litigation. For example, a plaintiff repeatedly flouting legitimate discovery requests and concomitant orders for compliance may be sanctioned out of court. A similarly noncompliant defendant may be sanctioned into a judgment imposing liability. See K.S.A. 2019 Supp. 60-237(b)(2); Fed. R. Civ. Proc. 37(b)(2). Res judicata in its typical form serves the ends of fairness and conserves judicial resources by preventing a plaintiff from serially filing actions against a defendant asserting *new* claims for relief arising from a unitary legal wrong that could have been presented and adjudicated in a single action or resurrecting claims that actually had been denied on their merits. Herington, of course, has done neither.

But the *Stanfield* rule of res judicata does not advance a sound purpose—it precludes plaintiffs from continuing to pursue claims for relief they have already asserted when a federal court declines to consider them for lack of jurisdiction. In that circumstance, a defendant faces no new or different claims and simply must continue litigating the same claims in a different forum. The additional imposition on the litigants is minimal. Here, the federal district court ruled late in the proceedings, granting summary judgment on the federal claims presumably after discovery on both the federal and state claims had been completed. Herington, of course, had to file this action in state court, and the defendants had to formally answer. Those are nominal burdens. In this case, Herington and the defendants could have agreed to rely on the discovery undertaken in the federal case. And if they didn't, the district court had the statutory tools to limit discovery and avoid unduly redundant discovery requests from either side. See K.S.A. 2019 Supp. 60-226(b)(2)(i). This case easily could have been channeled toward a rapid merits decision.

The actual burden of adjudicating or deciding the state law claims obviously would have shifted from the federal judge to the Sedgwick County judge. But comity doctrines promote the resolution of state law disputes by state courts rather than federal courts. See 28 U.S.C. § 1367(c)(1) (2016); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349-50, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); *Zell v. Ricci*, 957 F.3d 1, 16 (1st Cir. 2020). The *Stanfield* rule, however, confounds comity, since it requires the district court to dismiss the state law claims without considering their merits.

The long and short of it is *Stanfield* advances a rickety jurisprudence. That ought to weigh heavily against *Rhoten*'s affirmation of the rule as a matter of stare decisis or respect for precedent for its own sake. See *Sherman*, 305 Kan. at 108-09 (stare decisis given reduced sway with "originally erroneous" decisions).

In many circumstances, stare decisis protects the reliance interests of persons who have entered into contracts or business arrangements or have otherwise undertaken legal obligations based on the law enunciated in court decisions. See *McCullough*, 308 Kan. at 1036. Courts ought to exercise particular care in considering material changes in the common law that would upset those interests. But reliance interests are especially weak here.

The City of Wichita, its police officers, and its other employees almost certainly do not shape how they go about their business because they know that if they are sued in federal court, any companion state law claims cannot be successfully litigated in state court based on *Rhoten* and *Stanfield*. More generally, we may assume most people set out to act with due care rather than with indifference to or deliberate disregard for the safety and wellbeing of others, and they would not act otherwise because of a quirky preclusion rule that might curtail their legal liability. Even if people relied on *Stanfield* that way, they would be prompted to engage in negative behaviors rather than ones the law should encourage. It also seems unlikely that government entities or private sector businesses would make decisions on liability insurance coverage or risk prevention policies based on conventional (or odd) preclusion rules. Reliance, then, doesn't provide a strong reason to retain the *Stanfield* rule.

In sum, there are compelling reasons to discard the *Stanfield* decision's formulation of res judicata in favor of a return to the doctrine as set out in *Jackson Trak* and in authorities from state and federal courts across the country. The countervailing reasons for not doing so have little to recommend them, apart from slavishly maintaining a consistency that is unfair and in conflict with basic purposes of the civil litigation process.[5]

[5]In *Cain v. Jacox*, 302 Kan. 431, Syl. ¶ 3, 354 P.3d 1196 (2015), the court recognized that res judicata should be applied with flexibility and discernment. The court cautioned against rigid or wooden applications of res judicata that disserve the doctrine's

purposes and the broader objectives of achieving a "justice" in a given case. The court did not mention *Stanfield* or *Rhoten*, and the issue there bore on whether Cain was a party or sufficiently aligned with a party in an earlier action to be bound by res judicata. Although the *Cain* court considered res judicata under Kansas law, the elements of the doctrine are the same as those identified in federal law.

In the absence of federal authority compelling the specific construction of res judicata in *Stanfield* to cut off litigation of state law claims dismissed in federal court for lack of jurisdiction—and there is none—*Cain* arguably implies that application could be independently assessed in this case. In other words, the application of the *Stanfield* rule to Herington's state law claims in this case should be determined in light of the purposes of res judicata and the fundamental unfairness of precluding the litigation of her claims. And that determination should be made independent of any particular deference to *Stanfield* or the stare decisis endorsement of *Stanfield* in *Rhoten*. At the same time, however, *Cain* does not directly signal a retreat from those decisions. We are, therefore, obligated to decide this appeal in conformity with them. See *State v. Kane*, 57 Kan. App. 2d 522, Syl. ¶ 9, 455 P.3d 811 (2019) (Court of Appeals required to follow Kansas Supreme Court precedent "absent some indication" of departure or change), *rev. denied* 312 Kan. ___ (August 31, 2020).

*Federal Supplemental or Pendant Jurisdiction Over State Claims*

Because *Stanfield* and *Rhoten* apply res judicata to bar state law claims that have been dismissed without prejudice in federal court for lack of jurisdiction, I look at how federal courts statutorily extend and retract their jurisdiction over state law claims. The way federal courts may exercise their supplemental jurisdiction under 28 U.S.C. § 1367 further illustrates the basic unfairness of the *Stanfield* iteration of res judicata and provides the foundation for what may be a constitutional defect in that version.

To begin with the obvious, federal courts are courts of limited jurisdiction. They do not have original jurisdiction to hear state law claims unless the plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332 (2016) (diversity jurisdiction). In addition to that diversity jurisdiction, however, federal courts may hear state law claims arising from the same controversy as federal claims over which they do have original jurisdiction. 28 U.S.C. § 1331 (2016)

(original jurisdiction over cases arising under federal law). Federal courts exercise this supplemental jurisdiction over state claims through 28 U.S.C. § 1367, enacted in 1990 to codify what had been known as pendant jurisdiction. See *United Mine Workers*, 383 U.S. at 725 (recognizing "[p]endant" jurisdiction over state law claims arising from same case or controversy as federal claims providing original jurisdiction).

Under 28 U.S.C. § 1367(a), a federal court having original jurisdiction of an action may exercise "supplemental jurisdiction" to hear state law claims over which it would otherwise lack jurisdiction if those claims "form part of the same case or controversy." Here, there is no dispute the federal district court had supplemental jurisdiction to hear the state law tort claims Herington joined with the federal civil rights claims she brought under 42 U.S.C. § 1983. This is not a case involving federal claims of doubtful validity ginned up as a device to litigate state claims in a federal forum. Nor is there any question that the federal claims and the state law claims arose from the same controversy. This case, then, illustrates a common circumstance for the proper exercise of supplemental jurisdiction.

In the run of cases, supplemental jurisdiction promotes judicial efficiency. A plaintiff may bring both federal and state law claims in a single action in a single court for determination. In turn, the defendant need not answer and litigate factually related claims in state court and federal court at the same time. Adjudicating factually allied claims in a single case also eliminates the possibility of discordant outcomes from different fact-finders in different courts—something that tends to erode public confidence in the judicial process. See *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1312 (11th Cir. 2016) (noting 28 U.S.C. § 1367 promotes judicial efficiency and avoids risk of conflicting judgments); *Romine v. Compuserve Corp.*, 160 F.3d 337, 341 (6th Cir. 1998) (noting "'[t]he legitimacy of the court system in the eyes of the public'" would be "'endangered'" by conflicting judgments in factually interlocking state and federal

25

actions) (quoting *Lumen Constr., Inc. v. Brant Constr. Co.*, 780 F.2d 691, 694 [7th Cir. 1985]).

A federal court's authority to invoke supplemental jurisdiction under 28 U.S.C. § 1367(a) is categorical. 28 U.S.C. § 1367(a) ("the district courts shall have supplemental jurisdiction"). But in its discretion, a federal court "may decline to exercise" that authority in some circumstances, as provided in 28 U.S.C. § 1367(c). In this case, the federal court relied on 28 U.S.C. § 1367(c)(3), allowing withdrawal of supplemental jurisdiction when the federal claims furnishing original jurisdiction have been dismissed. When a federal court dismisses the federal claims, all that remain are state law claims the court would not have had jurisdiction to hear in the first instance.

There are sound jurisprudential reasons for the federal court to pull back in that situation. As courts of limited jurisdiction, they simply should be chary in acting when the foundation for their jurisdictional authority in a given case has been washed away. Continued dominion over the remaining controversy may look more like the exercise of judicial power than discerning judgment. Comity, of course, typically counsels federal courts to defer to state courts in deciding matters of state law. And that call for deference may be particularly strong when the state's law is unsettled. Indeed, 28 U.S.C. § 1367(c)(1) specifically permits a federal court to decline supplemental jurisdiction when a "claim raises a novel or complex issue of State law."

Congress intended 28 U.S.C. § 1367 to balance judicial efficiency and comity by allowing federal courts to decide all of the claims between parties otherwise properly in that forum with the expectation those courts typically would channel any state claims to a state forum if the basis for their original jurisdiction evaporated during the course of the litigation. As I have indicated, dismissal of the state law claims would be without prejudice for lack of jurisdiction—a disposition that is expressly *not* on their merits whether the federal court enters its order under Fed. R. Civ. Proc. 41(b) or otherwise.

26

Fed. R. Civ. Proc. 41(b) (dismissal for lack of jurisdiction not "an adjudication on the merits" whether entered pursuant to Fed. R. Civ. Proc. 41[b] or "not under this rule").

By design, then, 28 U.S.C. § 1367, in combination with Fed. R. Civ. Proc. 41, is supposed to allow a plaintiff to file the dismissed state law claims in state court for adjudication. And that scheme has been expressly crafted to prevent a defendant from interposing a state procedural bar arising from the federal case to preclude a merits determination of any state claims that had been dismissed for lack of jurisdiction. To that end, Congress included a provision in 28 U.S.C. § 1367 that tolls any state statute of limitations for at least 30 days following the dismissal of the federal action, rendering the refiling of the state law claims in state court timely. 28 U.S.C. § 1367(d). So 28 U.S.C. § 1367(d) effectively overrides a state limitations period that otherwise might afford a procedural defense to the state law claims.

Congress intended 28 U.S.C. § 1367 to carry forward *United Mine Workers'* pronouncement that pendant jurisdiction should be construed to allow a plaintiff to litigate any state claims dismissed in federal court for lack of jurisdiction. 383 U.S. at 726-27. That rule forms a well-recognized component of 28 U.S.C. § 1367. *Gold v. Local 7 United Food and Commercial Workers*, 159 F.3d 1307, 1311 (10th Cir. 1998) (When a federal court declines supplemental jurisdiction under 28 U.S.C. § 1367, "[t]he proper course of conduct . . . is to dismiss the state law claims without prejudice, in order to permit them to be brought in state court."); 47 Am. Jur. 2d, Judgments § 548 (Dismissal without prejudice ordinarily indicates "the absence of a decision on the merits leaving the parties free to litigate the matter in a subsequent action."); 13D Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction, 3d § 3567.3 at 410-11 (When a federal court "dismiss[es] the state-law claims without prejudice . . . . [t]his course permits the plaintiff to refile in state court."); Restatement (Second) of Judgments § 20(1)(b) (A judgment for the defendant does not bar another action by the plaintiff on the same claim when the court directs that the action be dismissed without prejudice). The rule presumes

the federal court's dismissal for lack of jurisdiction will not itself trigger a bar in state court thwarting a determination of the state law claims on their merits.

Rule 41's treatment of a dismissal for lack of jurisdiction as a disposition other than on the merits of the claim underscores and codifies that presumption as a matter of federal law. See 28 U.S.C. § 2072 (2016) (general rules of practice and procedure prescribed by United States Supreme Court have force of law); *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988) (Federal Rules of Criminal Procedure have binding force of law); *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 506 (D.C. Cir. 2016) (Federal Rules of Civil Procedure have binding force of law). Courts have routinely held that a dismissal for lack of jurisdiction as described in Fed. R. Civ. Proc. 41(b) does not entail a merits determination supporting a res judicata bar if those claims are refiled. See *Costello v. United States*, 365 U.S. 265, 285-86, 81 S. Ct. 534, 5 L. Ed. 2d 551 (1961) (Court construes Fed. R. Civ. Proc. 41 as embodying settled common-law principles that dismissal for lack of jurisdiction does not go to merits of the claim and "'will prove no bar to another suit'"); *Brereton v. Bountiful City Corporation*, 434 F.3d 1213, 1216-17 (10th Cir. 2006); *Gold*, 159 F.3d at 1311 n.5 (when federal district court dismisses state claims for lack of supplemental jurisdiction under 28 U.S.C. § 1367[c], "there can be no res judicata effect in state court"). The Kansas res judicata doctrine established in *Stanfield*, therefore, materially conflicts with the operation of and the policies behind 28 U.S.C. § 1367, and that has constitutional implications.

State law that substantially interferes with the operation of federal law violates the Supremacy Clause of the United States Constitution. In pertinent part, the Supremacy Clause states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. The Supremacy Clause negates state

28

statutes and common law to the extent they substantially impede or conflict with federal law. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S. Ct. 2608, 120 L. Ed. 2d 407 (1992); *Howlett v. Rose*, 496 U.S. 356, 371, 110 S. Ct. 2430, 110 L. Ed. 2d 332 (1990) (Supremacy Clause negates state court opinions interfering with federal law); *Hillsborough County v. Automated Medical Labs., Inc.*, 471 U.S. 707, 712-13, 105 S. Ct. 2371, 85 L. Ed. 2d 714 (1985) ("It is a familiar and well-established principle that the Supremacy Clause, U.S. Const., Art. VI, cl. 2, invalidates state laws that 'interfere with, or are contrary to,' federal law.") (quoting *Gibbons v. Ogden*, 22 U.S. 1, 211, 6 L. Ed. 23, 9 Wheat. 1 [1824]). In short, state law that "'stands as an obstacle'" to the accomplishment of federal law must yield—an application of the Supremacy Clause often referred to as conflict preemption. *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376-77, 135 S. Ct. 1591, 191 L. Ed. 2d 511 (2015); see also *Board of Miami County Comm'rs v. Kanza Rail-Trails Conservancy, Inc.*, 292 Kan. 285, 294-95, 255 P.3d 1186 (2011) (describing operation of Supremacy Clause).

Particularly relevant here, the United States Supreme Court has recognized Congress appropriately exercised its authority under the Necessary and Proper Clause of the United States Constitution when it enacted 28 U.S.C. § 1367 to facilitate the administration of justice in the federal courts. *Jinks v. Richland County, South Carolina*, 538 U.S. 456, 462-63, 123 S. Ct. 1667, 155 L. Ed. 2d 631 (2003); U.S. Const. art. I, § 8. In *Jinks*, the Court specifically upheld 28 U.S.C. § 1367(d), thereby permitting the plaintiff to refile in South Carolina circuit court several state law claims dismissed in federal court for lack of jurisdiction even though they otherwise would have been barred by the state's statutes of limitation. Recognition that a congressional enactment satisfies the Necessary and Proper Clause, in turn, gives the measure primacy over conflicting state law under the Supremacy Clause. See *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 325-26, 135 S. Ct. 1378, 191 L. Ed. 2d 471 (2015) (appropriate adoption under Necessary and Proper Clause accords enactment status under Supremacy Clause);

*New York v. United States*, 505 U.S. 144, 158-59, 112 S. Ct. 2408, 120 L. Ed. 2d 120 (1992); Dinh, *Reassessing the Law of Preemption*, 88 Geo. L.J. 2085, 2088 (2000).[6]

[6]The interplay of the Necessary and Proper Clause and the Supremacy Clause and their cognate elevation of federal law over conflicting state law is both logical and long recognized. When Congress enacts laws necessary to carry out its constitutional duties under art. I, § 8, cl. 18 (the Necessary and Proper Clause), those enactments definitionally have been "made in Pursuance" of the Constitution and must be treated as "the supreme Law of the Land" under art. VI, cl. 2 (the Supremacy Clause). Alexander Hamilton explained that connection between the two clauses in Federalist No. 33 as limiting supremacy to congressional actions authorized in the Constitution as necessary and proper. The idea easily shifted to decisions of the United States Supreme Court. See *Embry v. Palmer*, 107 U.S. 3, 9-10, 2 S. Ct. 25, 27 L. Ed. 346 (1883); *M'Culloch v. Maryland*, 17 U.S. 316, 420-24, 4 L. Ed. 579, 4 Wheat 316 (1819). So 28 U.S.C. § 1367 reflects a necessary and proper enactment of Congress under its authority to "ordain and establish" federal courts granted in art. III, § 1 of the United States Constitution and "[t]o constitute Tribunals inferior to" the Supreme Court in art. I, § 8, cl. 9. See *Jinks*, 538 U.S. at 462. In turn, the statute must be given primacy over conflicting state law, including judicial decision, under the Supremacy Clause.

The *Stanfield* res judicata rule undermines one of the principal purposes of 28 U.S.C. § 1367 and, therefore, must yield under the Supremacy Clause. As I have outlined, 28 U.S.C. § 1367 encourages adjudication of state and federal law claims arising out of a single set of operative facts in a unified civil action. To that end, the statute ensures state law claims dismissed from federal court for lack of jurisdiction may then be adjudicated in an appropriate state forum free from procedural bars resulting from the initial federal litigation. The *Stanfield* rule imposes precisely such a bar, thwarting *any* review of the state claims on their merits.

Although 28 U.S.C. § 1367 expressly negates state statute of limitations barriers, it necessarily overrides a state court's reliance on preclusion doctrines, such as res judicata, as well. That's because a federal court's dismissal of supplemental state law claims for lack of jurisdiction is *not* an adjudication on their merits, whether entered under Fed. R. Civ. Proc. 41(b) or otherwise. A federal judgment "on the merits" can be given res

judicata effect in later litigation involving the same parties or those in privity with them. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981); see *Adams v. City of Indianapolis*, 742 F.3d 720, 735-36 (7th Cir. 2014). Conversely, a federal judgment of dismissal for lack of jurisdiction cannot. See *Costello*, 365 U.S. at 285-86 (dismissal of claim on grounds other than merits typically no bar to later litigation of claim); *Ernst v. Rising*, 427 F.3d 351, 366 (6th Cir. 2005) (acknowledging *Costello* and applying rule that dismissal for lack of jurisdiction is neither on merits nor bar to later action on claim).

A state court, in turn, cannot give whatever preclusive effect it wishes to a federal court judgment entered in a case before the federal court on federal-question jurisdiction—as this case was. The state court must adhere to federal law governing the legal effect of the judgment. *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001); see *Heck v. Humphrey*, 512 U.S. 477, 488 n.9, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994). The *Semtek* Court explained the required deference this way:

> "It is also true, however, that no federal textual provision addresses the claim-preclusive effect of a federal-court judgment in a federal-question case, yet we have long held that States cannot give those judgments merely whatever effect they would give their own judgments, but must accord them the effect that this Court prescribes." 531 U.S. at 507.

The Court also explained that a judgment on the merits triggering res judicata is one that adjudicates a party's claim on the substantive issues it presents. 531 U.S. at 501-02. Thus, "'[A] final judgment, rendered upon the merits by a court having jurisdiction of the cause . . . is a complete bar to a new suit between [the parties or their privies] on the same cause of action.'" 531 U.S. at 502 (quoting *Goddard v. Security Title Ins. & Guarantee Co.*, 14 Cal. 2d 47, 51, 92 P.2d 804 [1939]). Here, the federal district court declined jurisdiction over Herington's state law claims and did not rule on their merits, draining that judgment of preclusive effect as a matter of federal law.

In short, a state court must give that same legal effect to the federal court dismissal consistent with the Supremacy Clause. Both res judicata and collateral estoppel depend upon a merits adjudication in an earlier action for their application in a later action. The Kansas Supreme Court cannot treat a federal order of dismissal that declines to reach the merits of the dismissed claims as if it does to impose a res judicata bar or for some other purpose. But the *Stanfield* rule of res judicata effectively does just that, impermissibly usurping federal authority defining the scope and effect of federal court judgments in federal-question cases and conflicting with the requirements of 28 U.S.C. § 1367. By functionally denying Herington a state forum to litigate her state law claims, the *Stanfield* pronouncement of res judicata conflicts with 28 U.S.C. § 1367 and is constitutionally infirm under the Supremacy Clause.

In the interests of basic fairness, the Kansas Supreme Court should reconsider the *Stanfield* rule of res judicata as poor doctrine fostering bad results. Even if that were an insufficient reason, the rule should be set aside under the Supremacy Clause as impermissibly interfering with federal law. Either way, Herington and other plaintiffs would receive hearings on their claims with no meaningful loss of judicial efficiency or untoward imposition on defendants.