No. 37,032

EDNA K. SWIGART et al. (*Plaintiffs*) *Appellees*, v. EDWARD MILES KNOX et al. (*Defendants*) *Appellants*.

(196 P. 2d 246)

Opinion filed July 10, 1948.

*Stanley E. Toland,* of Iola, argued the cause, and was on the briefs for appellant Samuel M. Knox, Jr.

*Frederick G. Apt,* of Iola, argued the cause, and *Mitchell H. Bushey* and *Howard M. Immel,* both of Iola, were with him on the briefs for appellee R. C. Highbargin.

The opinion of the court was delivered by

SMITH, J.: This is an action to partition the corpus of a trust consisting of real estate under the terms of a will. The estate was partitioned and what would have been the share of one of the

beneficiaries was by the trial court in its final judgment awarded to a party to whom this beneficiary had mortgaged it and who had foreclosed the mortgage and was in possession. This beneficiary has appealed. An action involving this trust filed many years ago and in which orders have been made from time to time and which had not been finally determined was consolidated with this action in the lower court. The appealable order was made, however, in the action to distribute the corpus of the trust.

About many of the facts there is no dispute. Samuel M. Knox, out of whose will this action arose, died testate a resident of Allen county, Kansas, on May 14, 1907. His will was duly admitted to probate in Allen county. He owned at his death 4,800 acres of land in that county as well as some land in other states. He left surviving him his widow Hannah, Mary K. Stevens, a daughter, and Samuel F. Knox and Anson H. Knox, sons.

The will named Hannah H. Knox and Mary K. Stevens as executors and also as trustees under the trust created by the will. The will contained ten paragraphs. It bequeathed all the testator's real estate in trust to his wife and two daughters. It set up a somewhat involved trust and provided that none of the real estate bequeathed should be sold as long as any of testator's children should live, except to pay debts; directed the trustees to lease the farm lands, and to keep the income from the Allen county farm land separate from that from other real estate. The will then bequeathed the rents from the real estate in trust to the trustees and directed that it should be equally divided among testator's children. The will then contained a clause, as follows:

"And I will and direct that no part of real or personal estate hereby devised or bequeathed in trust to said named trustees and the survivor of them and their successors in trust hereunder or directed herein to be held and considered as a part of the trust estate hereby created, and no part of the rents, income or proceeds from such trust estate shall, prior to the actual division thereof and the actual delivery or conveyance thereof to the beneficiaries entitled thereto hereunder or while the same is in the custody possession or under the control of said named trustees or the survivor of them or their successors in trust hereunder, in any manner whatsoever, be bargained, sold, assigned, conveyed, mortgaged or incumbered by my said wife or either of my children, other than as trustee hereunder, or by either of my descendants or by either of my next of kin or be subject to any debt of or claim against my said wife or either of my children or either of my descendants or either of my next of kin or be subject to any suit or proceeding brought to collect any such debt or claim out of the share of my wife or share of any such child, descendant or next of kin, and in making divisions of such trust estate and the rents, income

and proceeds therefrom as in this will directed, said named trustees and the survivor of them and their successors in trust hereunder shall utterly disregard all and every transfer, assignment, conveyance or incumbrance thereof or any part thereof made by my said wife or by either of such children, descendants or next of kin."

The will then provided that at the death of the testator's last surviving child the real estate bequeathed should be equally divided *per stirpes* between testator's then surviving descendants and also that the trustees should report to a district court in Illinois as to land located in that state and to the district court of Allen county as to land located there.

It appears clear that the trust created by the will was what is designated a spendthrift trust. Soon after the will was admitted to probate Hannah exercised the option provided for her by statute and elected to take under it rather than under the will. Pursuant to this election one-half of the 4,800 acres of Allen county land was set off to her. This left 2,400 acres in the trust.

On November 1, 1910, Hannah Knox and Mary K. Stevens filed an action in the district court of Allen county, in which they asked instructions as to how to administer this trust. Anson H. Knox and Samuel F. Knox were named defendants in that action. Service was had on both of them. From now on in this opinion for the sake of clarity this action will be referred to as case number 9,159.

The district court sustained a demurrer to the petition.

On appeal we reversed the district court. (See *Knox v. Knox*, 87 Kan. 381, 124 Pac. 409.) It was argued here that the petition was demurrable because no particular dilemma, upon which judgment could be pronounced, was ·shown to exist. In dealing with this argument we discussed the broad general nature of suits to construe wills and said the court below could, upon motion of either party or on its own motion, cause the petition to be made definite and certain so as to present issues upon the various provisions of the will in such a manner as would admit of an orderly trial and final judgment. With such an opinion the judgment sustaining the demurrer to the petition was reversed and the case remanded to the district court for further proceedings.

On July 27, 1912, the plaintiffs in case 9,159 filed an amended petition. They alleged they were in grave doubt as to the construction of the will because it was indefinite, uncertain and contradictory and asked for instructions. Issues were joined and the parties entered into a stipulation. As a part of it Hannah H. Knox and

Mary K. Stevens withdrew as trustees and Mary K. Stevens relinquished all her right, title and interest in any of the real estate in question and she, together with Samuel F. Knox and Anson H. Knox, agreed that the 2,400 acres of Allen county land remaining in the trust after one-half of the original 4,800 acres had been allotted to Hannah was to be partitioned between Samuel F. Knox and Anson H. Knox. The tract with which we are interested here is 400 acres, a portion of the 1,200 acres awarded to Anson H. Knox. The trial court found that the land left in the trust could not be managed under it at a profit nor to the best interest of the parties and partitioned it as provided in the stipulation. The decree of the court provided the land was allotted to them in fee simple. Anson H. Knox was appointed trustee of the 1,200 acres awarded to him and Samuel F. Knox was appointed trustee of the land allotted to him. Jurisdiction of the entire matter was retained by the court. Anson H. Knox died June 8, 1929. He left surviving him Samuel M. Knox, Jr., who is the appellant here, and Edna Knox Swigart and Mary Knox Finster, the latter two daughters who brought this action for partition. They all three filed proceedings in the district court in case 9,159 of which the trial court had retained jurisdiction and asked that trustees for the 1,200 acres be appointed to succeed him, their father Anson H. Knox. The trial court on July 12, 1930, found that upon the termination of the trust the applicants would be entitled to the entire property held by Anson at his death; that they had agreed amongst themselves to a division of it when the trust estate was terminated and that it would be to the advantage of each of them to be appointed trustee over the land which would eventually belong to each of them. The decree then proceeded to appoint each of the applicants trustee over a described 400-acre tract; Samuel M. Knox, Jr., was appointed trustee for the 400-acre tract, with which we are concerned here. On December 23, 1914, Edna K. Swigart and Mary K. Finster executed and delivered to Samuel M. Knox, Jr., a quitclaim deed to the trust in question. This deed was recorded June 13, 1936. Similar deeds were exchanged between all the parties. The trial court found that none of the above parties ever made any report or did anything required of the trustees by the will with reference to the land allotted to them but that Samuel M. Knox, Jr., entered into open and notorious possession of the land allotted to him and held it in fee simple; mortgaged it twice; de-

fended an ejection action based on a tax deed and executed oil and gas leases upon it. The appellant disputes the correctness of this finding for lack of evidence. He pleaded, however, in his answer in this case that for more than twenty-five years prior to November 14, 1940, on which date he as an individual only was evicted from possession of the tract, he resided upon it either as trustee or with the consent of the previous trustee; made valuable improvements upon it and raised his family there with the expectation that upon the termination of the trust it would become his.

On June 13, 1936, Samuel M. Knox, Jr., borrowed $4,000 from the Allen County State Bank and gave a note secured by a mortgage on the tract to secure it. This note was paid on November 10, 1936, and released of record that day. On the 9th day of November, 1936, Samuel M. Knox, Jr., for the purpose of paying off that note, gave R. C. Highbargin his note for $5,000 and secured it by a mortgage on the same land. On April 2, 1938, this note became in default and Highbargin brought an action to foreclose it. It should be noted here that this mortgage was given by Samuel M. Knox, Jr., as an individual, not as a trustee. Service was had on him but he defaulted. On June 28, 1938, the mortgage was foreclosed and judgment entered against Knox for $5,466.60. In due time the land was ordered sold, the sale was confirmed and a sheriff's deed was issued to R. C. Highbargin, the mortgagee. On February 9, 1940, Knox was in possession of the property and refused to give possession of it to Highbargin, whereupon Highbargin filed a praecipe for a writ of assistance commanding the sheriff of Allen county to forthwith dispossess Knox. When the sheriff was proceeding to execute this writ Samuel M. Knox, Jr., as trustee, under the will of Samuel M. Knox, deceased, brought an action against the sheriff and Highbargin in which he set out the fact that he had been appointed trustee to the real estate in question; that he had taken possession of it on July 12, 1930, as trustee. He set out the terms of his grandfather's will; set out the facts as to case 9,159 that had been brought to construe the will; told about how his father had been trustee of the land and had taken possession of it; alleged that all the children of the testator were dead except Samuel F. Knox; stated that the defendants were without lawful rights of authority to dispossess him and take possession of the real estate in question; alleged that his legal remedy for such illegal acts was inadequate and asked that the sheriff be enjoined from dispossessing him as the writ of assistance that had been issued in the mortgage case commanded.

To this petition Highbargin answered with a general denial; then he set out that he was the owner of the land in question; told about how Knox borrowed the money from him and gave a mortgage for it and that he had foreclosed the mortgage; the sale had been confirmed; the land sold and the period of redemption expired; that the action was one collaterally to attack the judgment in the mortgage foreclosure case; that in June, 1936, the land had been subject to large tax liens; told the story as related here about how Samuel M. Knox, Jr., had come into possession of the land; that the district court of Allen county was a court of competent jurisdiction for the purpose of administering the trust; told about the various orders that have been set out heretofore in this opinion; alleged that after the entry of the order to Anson H. Knox, setting aside the 1,200 acres heretofore referred to, he entered into open, notorious, and exclusive possession of it; told about how he had died and left the children heretofore spoken of; that from December 23, 1914, Samuel M. Knox, Jr., has in his own right been in exclusive and adverse possession of the real estate in question; that he had performed many acts of ownership with reference to it; and that by his acts, possession and claim of ownership and dominion over it, he had been as a matter of law the full, actual, undisputed legal and equitable owner of it and that he was such owner prior to November 9, 1936; alleged that the mortgage was a good and valid conveyance to the defendant and that by reason of the facts stated Knox was estopped from claiming or asserting any right or title to the real estate by reason of case 9,159 to construe the will and the action in foreclosure and that plaintiff was not entitled to any relief.

As a reply to this, Samuel M. Knox, Jr., as trustee, admitted the execution of the note and mortgage, but alleged that he was not in his capacity as trustee a party to the mortgage foreclosure action and the issues involved in that action were not litigated or determined in the mortgage foreclosure action; denied that the taxes paid on the land in June, 1936, were paid from any money borrowed from Highbargin; stated that the loan of $5,000 was made to him as an individual, not as a trustee.

The action proceeded to trial to the court without a jury. The court found the issues for the defendant and against the plaintiff and in particular that the plaintiff as an individual and also as a trustee had been in possession of the land for many years; that the trustee never filed any report, never was active in any way and

had obtained a loan on the land in question; the court recited that whatever interest the plaintiff had as trustee had been waived by plaintiff; that it would be inequitable to permit him to escape paying the mortgage and that the court found the issues in favor of the defendants and against the plaintiff and the injunction should be denied. The court did say further that the injunction was in all probability not the proper remedy. Following this judgment, the plaintiff appealed to this court. This court fixed a supersedeas bond, however, which the appellant was unable to furnish, and the appeal was dismissed. On November 7, 1940, the sheriff under the writ of assistance issued in the case of Highbargin against Knox, the mortgage foreclosure action placed Highbargin in possession. On November 20, 1940, Knox filed a motion to reinstate the appeal, but that motion was denied.

On August 22, 1944, Samuel F. Knox, being the last surviving child of the testator, Samuel M. Knox, died, whereupon Edna K. Swigart and Mary K. Finster, two daughters of Anson H. Knox, and being sisters of Samuel M. Knox, Jr., filed this present action, in which they asked that the corpus of the trust be partitioned, they named some forty-seven parties defendants and amongst them were all of the grandchildren and some great-grandchildren of the testator, Samuel M. Knox. In their petition they told their story about as it has been detailed in this opinion. They asked that the court proceed to divide the 2,400 acres of land in accordance with the provisions of the will. Many of the children and grandchildren answered setting out the facts pertinent to their case and asking the same relief. Samuel M. Knox, Jr., appellant here, filed an answer, in which he admitted many of the allegations of the petition and in which he alleged that he had been in possession of the 400 acres in question as trustee for more than twenty-five years prior to November 14, 1940, on the date he as an individual was evicted from possession of it. He then set out that the land was worth about $13,000 and since the death of the testator on May 14, 1907, there had been more uncertainty as to the provisions of the trust contained in the will; that about November 9, 1936, he verbally offered to defendant Highbargin a note secured by him covering the real estate and offered Highbargin an abstract of title; that after examination Highbargin agreed to make the loan and that on November 9, 1936, in consideration of the loan of $5,000 the defendant Samuel M. Knox, Jr., executed his promissory note in

writing payable to Highbargin and gave him a mortgage covering the above real estate; that this mortgage loan was obtained by him as an individual and was not made under authority of any court and was not made for the purpose of paying any debt of the testator, Samuel M. Knox, Sr., and that he was unable to pay the loan and the foreclosure action was commenced and duly pursued to the delivering of the sheriff's deed; that when the note came due he was unable to get a further loan because all prospective lenders refused to approve his title. He then alleged that because of the provisions of the last will of Samuel M. Knox, Jr., deceased, his mortgage to Highbargin did not give Highbargin any lien on the real estate and that the sheriff's deed held by Highbargin did not vest in him any right, title or interest in the real estate and that the real estate was part of a spendthrift trust and for that reason the mortgage could be of no force and effect; that the mortgage and the sheriff's deed based on it should be set aside for naught. Samuel M. Knox, Jr., offered to pay to Highbargin the principal amount of the loan, that is, $5,000, together with all interest thereon, and any sum the court might find Highbargin entitled to. Knox prayed that the terms of the trust be fully executed by the court. Samuel M. Knox, Jr., also filed an answer as trustee, in which he set out about the same allegations that were contained in his answer in person. Highbargin filed an answer and cross petition in which he set out many of the facts about as they have already been detailed in this opinion.

Samuel M. Knox, Jr., replied denying many of the allegations in the answer and cross petition of Highbargin and specifically alleged that the court first acquired jurisdiction of the trust in case 9,159, *Knox v. Knox;* that this jurisdiction had never been relinquished; that since the court had acquired that jurisdiction it was precluded from exercising any further jurisdiction, such as the foreclosure of the mortgage; and the judgment in that case was void for want of jurisdiction; and that the court was without jurisdiction because the court was not convinced of the inadequacy of the legal remedy and also because the court had already acquired jurisdiction in case 9,159; that the two actions have been consolidated for trial. Knox denied that the issues of the present action were *res judicata* on account of the issues in the above actions.

The trial court made lengthy and detailed findings of fact and in its judgment proceeded to award the real estate in question to

the grandchildren and great grandchildren of the decedent except that as to the 400 acres that had been awarded to Samuel M. Knox, Jr. The court awarded to the defendant R. C. Highbargin, his heirs and assigns the 400 acres which has been the subject of this appeal. Samuel M. Knox, Jr., individually and as trustee, moved the court for a new trial and for an order setting aside certain findings of fact and for additional findings of fact. All these motions were overruled and the defendant Samuel M. Knox, Jr., has appealed.

The story has taken a long time to tell because it covers a period from 1907 to the present, and several actions and many different proceedings in these actions. Stated succinctly, however, the legal question involved is the claim of Samuel M. Knox, Jr., that this is a spendthrift trust, that is, that none of the real estate bequeathed to the trustees could be alienated or any action taken which would prevent its descending to the person for whom the testator originally intended it. He argues from this that since the mortgage he gave Highbargin in 1936 was given as an individual, not as a trustee, and since it was foreclosed against him as an individual and not as a trustee nothing has ever happened to deprive him of his title to this land as trustee.

The appellee Highbargin argues that the whole matter is *res judicata* for many reasons, first the original action in *Knox v. Knox*, 9,159, wherein following the stipulation, the court gave Anson H. Knox the fee simple title to the 1,200 acres of land which included the 400 which appellant is now claiming, and that since no appeal was taken from that and all the parties acquiesced in it, Samuel M. Knox is now estopped from questioning it. He also maintains that the claim now advanced by Samuel M. Knox, Jr., is *res judicata* on account of the judgment in the foreclosure action from which no appeal was taken.

In answer to that, Knox contends that the mortgage foreclosure action was against him in his own right, and the judgment therein had no effect whatever upon his title as trustee.

All of these arguments overlook the force to be given the judgment in the case of Knox, as trustee, against the Sheriff and Highbargin. This action was brought by Knox, as trustee.

The appellant cites and relies on many cases where we have upheld a spendthrift trust. (See *Sherman v. Havens*, 94 Kan. 654, 146 Pac. 1030.) As stated in that opinion we have uniformly held that the wishes of a testator in a will such as we have here should

be carried out. The trouble about enforcing that rule here began in 1910 when the trial court in case 9,159 first partitioned the 2,400 acres between the two brothers, Anson H. and Samuel, and purported to confer on them a fee simple title as well as making them each a trustee. Apparently at the same time this was done the appellant, Samuel M. Knox, Jr., was put into possession of the 400-acre tract in controversy here.

It is clear from the will that the testator never did intend that any of his children should come into actual possession of any of the real estate he owned at the time of his death. He intended that it should be operated as farm land by the trustees until his last child was dead; hence the provision about the land itself being partitioned when that eventuality should happen. They did come into possession of it though, and thirty-eight years later the appellant is asking us to undo all of the proceedings and orders, and the effect thereof, that have transpired since the petition in that action was filed, so long ago. It is a great deal as though he were asking us to unscramble a mess of eggs. However, if what transpired in case 9,159 were the only thing with which we had to deal, we would not find the task insurmountable. But the appellant is faced with the task of getting rid of the force, not only of the orders and judgments in that case, and those in the mortgage foreclosure action, but also the judgment in the action he brought as trustee to enjoin the enforcement of the judgment of mortgage foreclosure. Many interesting legal points are discussed by learned and industrious counsel for the appellant in getting rid of these judgments. We find it unnecessary to consider all of these questions, however. We have concluded that the judgment in the case of Knox, as Trustee, against Highbargin, being an injunction suit to enjoin the sheriff from executing the writ of assistance in the mortgage foreclosure case, is *res judicata* of every issue raised by the appellant in this partition action. It is true the mortgage foreclosure action was brought against Knox in his own person rather than as trustee when as a matter of fact he was, in name at least, trustee. However, the injunction action was brought by Knox as trustee. Once the trustee brought such an action the allegations and the issues of fact were identical with those at issue in this case as far as Knox is concerned. This case raised the only legal objection there was to the judgment in the foreclosure action. It is worth noting, too, that in

it he did not make any tender of the money that he admitted he borrowed from Highbargin.

Appellant in dealing with the effect to be given the judgment in that case relies on what we said in *Probst v. Weigand,* 133 Kan. 232, 299 Pac. 611. There we held:

"A former judgment is not an estoppel or bar to a second action between the same parties where the cases are brought upon different causes of action unless the matters involved in the second were actually tried and finally determined in the first."

The appellant then states that the action to obtain judicial determination as to who was entitled to the various tracts of land left by the testator presents altogether different issues from those involved in the injunction action. We have examined the pleadings in all of the actions carefully and we cannot find a basis for the statement as to the issue raised by appellant in this action. The fact is, the issues are identical.

When this partition action was commenced, the title to the 400 acres with which we are concerned was in Highbargin, a stranger to the will. In order for a judgment in this partition action to have any effect on the title to this tract, the appellant must get rid of the judgment in the mortgage foreclosure action. He has attempted to do this in the injunction action and has failed.

The appellant points to the language of the trial judge in the injunction action wherein he stated that injunction was probably not the proper remedy. From this language he argued vigorously that action failed for other reasons than on its merits. He does not point out, however, in his brief that the court, before using the above language, said he found for the plaintiff and against the defendants on all the issues. I do not suppose we will ever know why Knox did not defend the mortgage foreclosure action as a trustee since after it was apparently too late he did bring the injunction action as trustee. However, it is unnecessary for us to know that to reach a conclusion on this appeal. The authorities are myriad to the effect that all matters which were or have been or could have been litigated in an action are *res judicata.* (See *First Nat'l Bank v. Schruben,* 125 Kan. 417, 265 Pac. 53; *Lins v. Eads,* 145 Kan. 493, 66 P. 2d 390; and *Mydland v. Mydland,* 153 Kan. 497, 112 P. 2d 104.)

The judgment of the trial court is affirmed.

WEDELL, J., concurs in the result.

SMITH, J. (concurring specially): I agree with what is said in the opinion of the majority. However, I would go one step further. After this appellant had been in possession of this land and held it as trustee and as an individual for twenty-five years, he asks us to hold that now, though he is one and the same person as the trustee, he should deprive the mortgagee of his rights because of the provisions of his father's will, all of which provisions have been violated with the approval of all the members of the family who were beneficiaries under it. In effect, he asks us to let him profit personally because he dealt with the mortgagee as an individual rather than as a trustee. It is such double talk as this that causes courts to be criticized. I do not think any equity court should grant such relief.

COWAN, J. (dissenting): This is a proceeding in equity and should be determined by equitable considerations. It is conceded that the testator created a spendthrift trust, such as has been recognized and enforced in Kansas for many years. The purpose of such trust was to give income to the spendthrift beneficiary but not to grant such beneficiary control over the income or the corpus of the property, since the creator thereof felt the beneficiary himself was incapable of handling such property. With this in mind, the creator of the trust appointed a trustee who had absolute control over the property and the income to the end that the spendthrift beneficiary could not encumber, mortgage or dispose of the corpus of the trust estate or the income therefrom. The last thing the testator desired was to have the spendthrift beneficiary manage the property. He foresaw what the result would be.

Some time after the death of the testator, through arrangement with the spendthrift beneficiary of a similar trust and with the aid of the district court, the spendthrift beneficiary of this trust was appointed trustee in direct violation of the terms of the trust and contrary to the principle of spendthrift trusts. Protection of testamentary trusts should be the prime duty of courts of equity. Under the terms of the instant spendthrift trust, the trustee was required to pay taxes and other charges against the property before paying any of the income over to the spendthrift beneficiary. But here, after the appointment of the spendthrift beneficiary as trustee, this provision of the trust was violated and taxes and other charges in a large sum accumulated against the corpus of the estate. To pay

these charges, the spendthrift beneficiary, in his own name, borrowed $5,000 from Highbargin, and, to secure the loan gave a mortgage individually and not as trustee upon the property in controversy. Highbargin had full knowledge of the terms of the will (either actually or constructive) and was aware that the mortgage was invalid under the terms of the spendthrift trust.

This mortgage, upon default, was foreclosed against the individual spendthrift beneficiary without making the trustee a party, and, of course, the judgment actually had no effect upon the corpus of the estate. When Highbargin attempted to take possession of the property under this ineffectual judgment, the spendthrift beneficiary then, as trustee, sought an injunction against Highbargin. In that action the district court held that the application for injunction should be denied on the ground that plaintiff trustee had an adequate remedy at law and gave as an additional reason for its action that the spendthrift beneficiary had been permitted to treat the property as his own for years, and, hence, the terms of the trust were of no effect. While the judge of the district court was different in person from the judge who appointed the spendthrift beneficiary as trustee, yet the district court is and was a continuing body. So we have, then, the same district court which made the violation of the trust possible using its own dereliction of duty as a ground for destroying the trust. A private litigant would not be permitted to take advantage of his own wrong. To me it seems equally vicious that a district court should take advantage of its own violation of the duties resting upon it, to destroy the testamentary trust.

It is clear that in the majority opinion effect is given to such judgment as *res judicata*. I cannot agree with the majority in its application of that commendable doctrine to the facts in this case. In the first instance, the trial court found that injunction should be denied for the reason that there was an adequate remedy at law. When it reached that conclusion, whatever else it determined was unnecessary to its decision. Therefore, the judgment was not *res judicata*. (50 C. J. S. 232, note 74.) Again, the granting or denying of an injunction is purely a matter of judicial discretion and the exercise of such discretion does not constitute *res judicata*. (Freeman on Judgments, 5th ed., p. 1360, § 646.) In the recent case of *Steinkirchner v. Linscheid*, 164 Kan. 179, 188 P. 2d 960, it was held by this court that in proceedings brought by the wife as

the guardian of an insane husband to sell a homestead, the judgment was void because the wife's individual interest might be antagonistic to her duty as guardian of the insane husband. The void judgment was held subject to collateral attack. The principles there involved were lack of adequate notice and representation by one without a personal conflicting interest. Both of these elements are essentials of due process. The same doctrine should be applied here. In the injunction suit brought by the spendthrift beneficiary as trustee, the interests of the trustee and the beneficiary were conflicting and judgment so obtained should be declared void and subject to collateral attack since the estate was not represented by a disinterested party. Highbargin, of course, was not an innocent purchaser but had full knowledge (actual or constructive) of all the facts and knew the lack of power of the spendthrift beneficiary to give the mortgage and the lack of independent representation for the trust estate. Hence, he is entitled to no special consideration by a court of equity.

But I wish to place my disagreement upon a much broader ground. The application of the doctrine of *res judicata* is not inflexible. It is a rule of convenience and necessity but, like all such rules, is not to be applied so rigidly as to defeat the ends of justice. Equity will enjoin the enforcement of a judgment where to do otherwise would be clearly inequitable or would amount to the furtherance of a fraud. So here in a proceeding in equity, the judgment should not be enforced by giving to it the weight of the doctrine of *res judicata*, since to do so would be to destroy the very thing equity should preserve, namely, the spendthrift trust. In 30 Am. Jur. 908, § 162, it is said:

"The doctrine of *res judicata* is a principle of universal jurisprudence, forming a part of the legal systems of all civilized nations. *It is not, however, to be applied so rigidly as to defeat the ends of justice; there are exceptions to it based upon important reasons of policy.* There is also support for the rule that judgments relied upon as creating an estoppel are to be construed with strictness." (Emphasis supplied.)

In 50 C. J. S. 13, a similar pronouncement with regard to *res judicata* is found in these words:

". . . On the other hand, the doctrine should not be applied so rigidly as to defeat the ends of justice."

If there ever was an instance where the ends of justice required an exception to the application of the doctrine of *res judicata*, this

is one. It is peculiarly the duty of courts of equity to enforce and supervise trusts. The testator died in the belief that the spendthrift beneficiary could not obtain control of the property while the trust existed. The spendthrift beneficiary in this instance, with the approval of the district court, has defeated the very terms of the trust and then the district court has used its own dereliction of duty as ground for holding that the trust was terminated by the conduct of the spendthrift beneficiary before the date fixed in the will for the end of the trust estate.

In this action the plaintiff offers to do equity. Highbargin has been offered back his original loan, plus interest, upon his accounting for the rents and profits received. This is clearly equitable. He is entitled to no more. He will not be injured by such treatment. The decision of the majority in this case is recognition in principle of spendthrift trusts but denial in practice. Application of the doctrine of *res judicata* was never intended to effect such an injustice.

Judgments have been denied the force of *res judicata* where they were obtained by collusion or fraud. There are enough circumstances in this case to warrant the inference that the judgment relied on was the result of collusion. The trust estate was not represented by a disinterested person. Highbargin was not an innocent purchaser for value but was cognizant of all the facts and circumstances tending to make his judgment invalid. The district court was fully aware of the prior action of the same court in violating the intent and purpose of the spendthrift trust. When the district court previously appointed the spendthrift beneficiary as trustee, it is evident to me that there was collusion, and the subsequent judgment against the trustee was but the culmination of the collusive arrangement countenanced and furthered by the action of the district court.

The action of the spendthrift beneficiary is not to be commended, and, if it were the protection of his interests alone which is involved here, I would not be dismayed by the result. But the creator of the trust is not here and has not been able for some time to defend the trust. Courts of equity are charged with the solemn duty to protect such testamentary trusts and carry them out. Instead of that, we have had here clear violations of the terms and principles of the trust by the court in the interest of one who had full knowledge of all the facts and circumstances, and one who, if he did not enter the collusive agreement to destroy the trust, at least furthered it by his actions. Under the circumstances, I cannot consent that

such an arrangement should be given effect by a very rigid and inequitable application of the doctrine of *res judicata*. Such an application defeats the ends of justice. I, therefore, respectfully dissent.

HARVEY, C. J., concurs in the foregoing dissent.