IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 120,329

DAWN HERINGTON, Individually, and as Mother and
Next Friend of B.D.J.L.,
Minor Child and Heir-at-Law of
TROY LANNING II, and as
Special Administrator of
the ESTATE OF TROY LANNING II,
*Appellant*,

v.

CITY OF WICHITA,
*Appellee*,

and CITY OF WICHITA
POLICE DEPARTMENT OFFICER RANDY WILLIAMSON, Individually,
*Defendant*.

SYLLABUS BY THE COURT

1.

Whether the doctrine of res judicata applies in a certain case is an issue of law over which appellate courts exercise unlimited review.

2.

Federal law governs the claim-preclusive effect of a federal court disposition of a federal law claim rendered in a case in which the federal court exercised federal question jurisdiction over the federal law claims.

1

3.

State law governs the claim-preclusive effect of a federal court disposition of state law claims rendered in a case in which the federal court exercised diversity jurisdiction over the state law claims.

4.

State law governs the claim-preclusive effect of a federal court disposition of a state law claim rendered in a case in which the federal court exercised supplemental jurisdiction over the state law claim, overruling *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 949 P.2d 602 (1997), and *Rhoten v. Dickson*, 290 Kan. 92, 223 P.3d 786 (2010).

5.

The doctrine of res judicata is an equitable common-law rule grounded in justice and sound public policy principles, each of which demands that a party not be vexed with litigation twice on the same cause. Before the doctrine of res judicata will bar a successive suit, the following four elements must be met:  (a) the same claim, (b) the same parties, (c) claims that were or could have been raised, and (d) a final judgment on the merits.

6.

When applying the res judicata rule, courts must be mindful of the equitable principles animating the doctrine. Thus, courts must consider the substance of both the first and subsequent action and not merely their procedural form. The doctrine may be liberally applied, but it requires a flexible and common-sense construction in order to vindicate the fundamental goals embedded in the requirements of justice and sound public policy.

7.

Kansas res judicata rules require courts to conduct a case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance of the case at hand. Federal rules employ a formulaic and rigid transactional approach. Kansas res judicata rules are readily distinguishable from the federal rules, overruling *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 949 P.2d 602 (1997), and *Rhoten v. Dickson*, 290 Kan. 92, 223 P.3d 786 (2010).

8.

Where, as here, a federal court declines to exercise supplemental jurisdiction over state law claims and dismisses those claims without prejudice, we hold there has been no final judgment on those state law claims, and Kansas' res judicata doctrine does not preclude a litigant from bringing those claims in state court, overruling *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 949 P.2d 602 (1997), and *Rhoten v. Dickson*, 290 Kan. 92, 223 P.3d 786 (2010).

Review of the judgment of the Court of Appeals in 59 Kan. App. 2d 91, 479 P.3d 482 (2020). Appeal from Sedgwick District Court; JEFFREY E. GOERING, judge. Opinion filed December 17, 2021. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the case is remanded with directions.

*James A. Thompson*, of Malone, Dwire & Thompson, LLC, of Wichita, argued the cause and was on the briefs for appellant.

*David R. Cooper*, of Fisher Patterson, Sayler & Smith, L.L.P., of Topeka, argued the cause, and *Samuel A. Green* and *J. Steven Pigg*, of the same firm, were with him on the briefs for appellee.

*Marcia A. Wood*, of Martin, Pringle, Oliver, Wallace & Bauer, L.L.P., of Wichita, was on the brief for amicus curiae Kansas Association of Defense Counsel.

*Theodore J. Lickteig*, of Lickteig Law Firm, LLC, of Lenexa, and *Donald N. Peterson II* and *Sean McGivern*, of Graybill & Hazlewood, LLC, of Wichita, were on the brief for amicus curiae National Employment Lawyers Association, Kansas City Chapter.

The opinion of the court was delivered by

STANDRIDGE, J.: Following the shooting death of her son by Wichita Police Officer Randy Williamson, Dawn Herington, as mother and administrator of her deceased son's estate (Herington), sued the City of Wichita and Williamson (defendants) in the United States District Court for the District of Kansas, alleging federal civil rights violations and several state law tort claims. The federal district court granted summary judgment in favor of the defendants on Herington's federal claims and declined to exercise supplemental jurisdiction over her state law claims, dismissing them without prejudice. Herington refiled her state law claims in Sedgwick County District Court. Relying on claim preclusion principles established in *Stanfield v. Osborne Industries, Inc.*, 263 Kan. 388, 949 P.2d 602 (1997), and approved in *Rhoten v. Dickson*, 290 Kan. 92, 223 P.3d 786 (2010), the district court held that Herington's state law tort claims were barred by res judicata, and the Court of Appeals affirmed. On review, Herington asks this court to reconsider our decisions in *Stanfield* and *Rhoten*.

FACTUAL AND PROCEDURAL BACKGROUND

Wichita Police Officer Randy Williamson fatally shot Troy Lanning II following a high-speed car chase and foot pursuit. Herington, Lanning's mother, sued the defendants in the United States District Court for the District of Kansas. In the complaint, Herington alleged violations of Lanning's federal civil rights as well as several state law tort claims.

4

The federal district court granted summary judgment in the defendants' favor on the federal claims. The court declined to exercise supplemental jurisdiction over any of Herington's state law claims under 28 U.S.C. § 1367(c)(3) (2012) and dismissed them without prejudice, never reaching the merits of those claims.

Herington refiled the state law claims in Sedgwick County District Court. Relying on *Stanfield* and *Rhoten*, the district court granted summary judgment to the defendants on all the state law claims, dismissing them as barred by res judicata.

The Court of Appeals affirmed the district court, holding that both courts were bound by *Stanfield* and *Rhoten*. See *Herington v. City of Wichita*, 59 Kan. App. 2d 91, 92-93, 479 P.3d 482 (2020). In a concurring opinion, Judge G. Gordon Atcheson agreed that the court was constrained by our prior decisions but challenged them as "eccentric and exceedingly unfair," "lack[ing] any anchor in the law," and arguably unconstitutional. 59 Kan. App. 2d at 93-94, 105 (Atcheson, J., concurring). He encouraged this court to reexamine our decision in *Stanfield* and to realign Kansas' application of res judicata with conventional preclusion principles. 59 Kan. App. 2d at 94 (Atcheson, J., concurring).

We granted Herington's petition for review.

ANALYSIS

Herington argues that *Stanfield* and *Rhoten* should be overruled. She asserts that the application of res judicata adopted in *Stanfield* and endorsed in *Rhoten* is contrary to widely accepted claim preclusion principles, violates the Supremacy Clause of the United States Constitution, and implicates her constitutional right to due process. The National Employment Lawyers Association (NELA) filed an amicus brief on behalf of Herington, asking this court to overrule *Stanfield* and *Rhoten*.

The defendants, for their part, contend that *Stanfield* and *Rhoten* correctly applied federal preclusion law and that the district court properly relied on those decisions to bar Herington's state law claims. The Kansas Association of Defense Counsel (KADC) filed an amicus brief on behalf of the defendants, arguing that *Stanfield* and *Rhoten* should be followed and not overruled.

Whether the doctrine of res judicata applies in a certain case is an issue of law over which appellate courts exercise unlimited review. *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015). Before deciding whether res judicata applies to preclude Herington's state law claims in this case, however, we first must decide whether state or federal law applies to determine the preclusive effect of the federal court's decision on those state law claims.

*Choice of law*

Before our 1997 decision in *Stanfield*, this court relied on Kansas common-law res judicata principles to hold that a federal court's dismissal of a state law supplemental claim would not have a preclusive effect. See *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 691, 751 P.2d 122 (1988) ("[A] judgment is not res judicata as to any matters which a court expressly refused to determine, and which it reserved for future consideration, or which it directed to be litigated in another forum or in another action.").

In *Stanfield*, however, this court redefined the application of res judicata in Kansas. There, the plaintiff filed an action in federal court for trademark infringement violations under the federal Lanham Act and included one state law claim alleging "slander, disparagement, and misappropriation of the plaintiff's personal name." 263 Kan.

6

at 391-92. The federal court granted the defendant's motion for summary judgment on the merits of the federal claims. The court declined to exercise supplemental jurisdiction over the plaintiff's state law claim. When the plaintiff refiled his state tort claim in the Osborne County District Court, the court held it was barred by res judicata.

On appeal, the plaintiff pointed out the differences between his federal and state law claims and argued that claim preclusion should not apply to bar his state law claim because the federal court never resolved it. At the beginning of our analysis, we recognized that "'[s]tate courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions on issues of federal law.'" 263 Kan. at 396 (quoting *Heck v. Humphrey*, 512 U.S. 477, 488 n.9, 114 S. Ct. 2364, 129 L. Ed. 2d 383 [1994]). Departing from our previous holding in *Jackson Trak* that applied Kansas common law res judicata principles, we applied federal—not state—res judicata law to resolve the identical issue. In doing so, we turned to the Tenth Circuit Court of Appeals' "transactional approach" test to define whether a claim is barred by res judicata. We held that, under federal law, transactions arising out of the same factual situation constitute one claim "regardless of the number of substantive legal theories that may be available to the plaintiff based on those facts." *Stanfield*, 263 Kan. at 401 (citing comments to the Restatement [Second] of Judgments §§ 24-25 [1980]). Although acknowledging the plaintiff's state law tort claim presented a different legal theory than the federal trademark claim, we applied the federal transactional approach and concluded the state law tort claim still arose out of the same transaction and therefore was barred under the federal rules of res judicata. 263 Kan. at 402.

Finally, we considered whether an exception to this rule was warranted in cases like the one before us, where a federal court declines to exercise supplemental jurisdiction over the plaintiff's state law legal theories and never rules on their merits. 263 Kan. at 402-03. Citing with approval to the analysis in *Mattson v. City of Costa Mesa*,

106 Cal. App. 3d 441, 164 Cal. Rptr. 913 (1980), we declined to create an exception: "The fact that the federal court did not consider the plaintiff's state law theories does not prevent claim preclusion from applying to the theories, since the theories arose out of the same claim or factual transaction which the federal court did determine." 263 Kan. at 403-04. In so holding, we did not reference any contrary authority or otherwise purport to overrule *Jackson Trak*.

More often than not, Kansas courts thereafter cited *Stanfield* generally without acknowledging its specific application of res judicata. See, e.g., *In re City of Wichita*, 277 Kan. 487, 506, 86 P.3d 513 (2004) (citing *Stanfield* for a standard of review); *Fowler v. State*, 37 Kan. App. 2d 477, 479-80, 154 P.3d 550 (2007) (same). But a handful of cases did rely on *Stanfield* to bar state law claims based on prior federal litigation. See, e.g., *Rhoten v. Dickson*, 40 Kan. App. 2d 433, 441-44, 192 P.3d 679 (2008) (plaintiff's state law claim barred by res judicata because it arose out of same transaction as prior federal lawsuit); *O'Keefe v. Merrill Lynch & Co.*, 32 Kan. App. 2d 474, 480-82, 84 P.3d 613 (2004) (plaintiffs' state law claim barred by res judicata because same claim had been litigated in prior federal arbitration proceeding); *Braxton v. Henderson*, No. 100,276, 2009 WL 77988, at *3 (Kan. App. 2009) (unpublished opinion) ("We can find no way to distinguish *Stanfield* and are bound to follow it.").

In 2010, this court accepted review in *Rhoten*, in part, to consider whether *Stanfield* should be overruled. *Rhoten*, 290 Kan. at 105. The plaintiff in *Rhoten* was injured following a car accident caused by police pursuit. The plaintiff filed an action in federal district court alleging federal civil rights violations against the City of Topeka and the police officer who initiated the pursuit. She also alleged state law negligence claims against the officer, the City, and the driver of the other vehicle involved in the accident. The federal court ruled against the plaintiff on the merits of her federal claims and then declined to exercise supplemental jurisdiction over the remaining state law claims,

dismissing them without prejudice. The plaintiff later pursued her state law claims in state court. Citing *Stanfield*, the district court held that the plaintiff's claims were barred by res judicata, and the Court of Appeals affirmed. 290 Kan. at 97-99.

On review, this court summarized the *Stanfield* court's analysis and agreed with its application of federal—not state—res judicata principles under the facts presented. Applying the federal transactional approach adopted by *Stanfield*, we found in *Rhoten* that the federal court order constituted a final judgment on the merits and that the plaintiff's federal claims comprised the same series of transactions as her state law negligence claims, which in turn meant that the state law claims had been fully and fairly litigated. 290 Kan. at 106-11. We recognized in *Rhoten* that application of res judicata deprived the plaintiff of any chance to have her negligence claims considered on their merits and agreed that this result was "counterintuitive." 290 Kan. at 111-12. Yet we declined to adopt an exception for state claims dismissed without prejudice in federal court, citing *Stanfield*'s "continuing strength" and compliance with federal law. 290 Kan. at 112.

As indicated above, we interpreted and applied federal—not Kansas—res judicata principles in both *Stanfield* and *Rhoten* to determine whether the doctrine of claim preclusion barred the plaintiffs from litigating in state court the state law claims over which the federal court declined to exercise supplemental jurisdiction. Based on the discussion below, this procedural distinction is significant in considering Herington's request to overrule these cases.

We begin by noting that the issue presented here is identical to the issue presented in *Stanfield* and *Rhoten*: whether the doctrine of claim preclusion barred the plaintiffs from litigating in state court the state law claims over which the federal court declined to exercise supplemental jurisdiction. As we did in *Stanfield* and *Rhoten* when presented

9

with this issue, we begin our analysis with a discussion about what law governs our decision. On this choice of law question, we find instructive the United States Supreme Court decision in *Semtek Int'l v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S. Ct. 1021, 149 L. Ed. 2d 32 (2001).

In *Semtek*, the Court was presented with the question of whether state or federal law governs the claim-preclusive effect given to federal court judgments when the federal court exercises *diversity* jurisdiction. The Court began its analysis by reiterating the longstanding rule that the preclusive effect of a federal court judgment is always determined by federal common law, which, in turn, is ultimately pronounced by the United States Supreme Court. 531 U.S. at 507-08. But the Court went on to explain that, under federal common law, different claim preclusion rules apply depending on whether jurisdiction attached because of a federal question or because of the parties' diversity of citizenship. In federal-question jurisdiction cases, where the goal of the federal common law is to develop a uniform rule of preclusion, the Court reiterated that federal law applies in conducting a claim preclusion analysis. See 531 U.S. at 504-05, 507; see also *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) ("For judgments in federal-question cases . . . federal courts participate in developing 'uniform federal rule[s]' of res judicata." [citing *Semtek*, 531 U.S. at 508]).

But the *Semtek* Court held, as a matter of first impression, that federal courts sitting in diversity—that is, when no federal question is present—must apply the preclusion law of the state in which the federal court sits unless the state law is "incompatible with federal interests." 531 U.S. at 508-09. The Court explained the better rule is for federal courts to apply state preclusion law in diversity cases because "there is no need for a uniform federal rule" in a state-law cause of action. 531 U.S. at 508. Indeed, the Court noted that an alternative federal common law rule would "produce the sort of 'forum shopping . . . and . . . inequitable administration of the laws' that *Erie* [*R.*

10

*Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)] seeks to avoid . . . since filing in, or removing to, federal court would be encouraged by the divergent effects that the litigants would anticipate from likely grounds of dismissal." 531 U.S. at 508-09 (quoting *Hanna v. Plumer*, 380 U.S. 460, 468, 85 S. Ct. 1136, 14 L. Ed. 2d 8 [1965]). See also 18B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 4469 (2d ed. 2021).

In both *Stanfield* and *Rhoten*, this court recognized that "'[s]tate courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions *on issues of federal law*.'" (Emphasis added.) *Stanfield*, 263 Kan. at 396 (quoting *Heck*, 512 U.S. at 488 n.9); *Rhoten*, 290 Kan. at 106 (also quoting *Heck*). However, in ultimately concluding that we were bound to apply federal rules to determine the preclusive effect of a federal court decision based on *supplemental* jurisdiction over the state law claims, we failed to notice the limitation set forth in italics above: that the rule announced in *Heck* applied *only to federal question cases*. In doing so, we announced an all-encompassing rule—without a corresponding analysis—that federal res judicata rules apply to *all* federal judgments, including not just federal question proceedings but those decided under diversity and supplemental jurisdiction as well.

Of course, the United States Supreme Court in *Semtek*—decided after *Stanfield* but before *Rhoten*—held that federal courts sitting in diversity must apply the preclusion law of the state in which the federal court sits unless the state law is "incompatible with federal interests." 531 U.S. at 508-09. Our all-encompassing rule announced in *Stanfield* and followed in *Rhoten* goes beyond, and perhaps is contrary to, the holding in *Semtek*.

The United States Supreme Court has never addressed the issue presented here: what law governs the claim-preclusive effect of a federal court disposition of a state law claim rendered in a case in which the federal court exercised supplemental jurisdiction

11

over the state law claim. But we predict the high Court would find the justifications cited in *Semtek* for applying state law claim preclusion rules to a federal court exercising diversity jurisdiction over a state law claim to be equally persuasive in cases where federal courts exercise supplemental jurisdiction over state law claims.

The most obvious justification is the well-entrenched rule that, unlike federal-question jurisdiction cases, a federal court must apply state law to state law claims in both diversity and supplemental jurisdiction cases. And we see no reason why applying Kansas preclusion law would be incompatible with federal interests. More specifically, and in the context of the facts before us today, applying state preclusion law to a state law claim when a federal court declines to exercise jurisdiction over and/or dismisses it without prejudice and without considering its merits would not undermine "federal courts' interest in the integrity of their own processes." See *Semtek*, 531 U.S. at 509 (providing, as an example, that a state's failure to estop "willful violation[s] of discovery orders . . . might justify a contrary federal rule"). To the contrary, applying Kansas preclusion law furthers the "federalism principle of *Erie*" by ensuring there are not "'"substantial" variations [in outcomes] between state and federal litigation' which would '[l]ikely . . . influence the choice of a forum.'" 531 U.S. at 504 (quoting *Hanna*, 380 U.S. at 467-68).

Based on the analysis above, we hold that when a federal court declines to exercise jurisdiction over and/or dismisses a state law claim over which it has supplemental jurisdiction and does so without considering the claim's merits, state preclusion law applies. To the extent the decisions in *Stanfield* and *Rhoten* are inconsistent with our holding today, we overrule those decisions.

Notably, "[w]e do not overrule precedent lightly and must give full consideration to the doctrine of stare decisis." *State v. Sherman*, 305 Kan. 88, 107, 378 P.3d 1060 (2016). We recognize that "'[t]he application of stare decisis ensures stability and

12

continuity—demonstrating a continuing legitimacy of judicial review. Judicial adherence to constitutional precedent ensures that all branches of government, including the judicial branch, are bound by law.'" *Crist v. Hunan Palace, Inc.*, 277 Kan. 706, 715, 89 P.3d 573 (2004) (quoting *Samsel v. Wheeler Transp. Servs., Inc.*, 246 Kan. 336, 356, 789 P.2d 541 [1990], *overruled on other grounds by Bair v. Peck*, 248 Kan. 824, 844, 811 P.2d 1176 [1991]); see *McCullough v. Wilson*, 308 Kan. 1025, 1036, 426 P.3d 494 (2018) ("[S]tare decisis effects even-handed, predictable, and consistent application of the law.") (citing *Johnson v. United States*, 576 U.S. 591, 606, 135 S. Ct. 2551, 192 L. Ed. 2d 569 [2015]).

That said, stare decisis "is not a rigid inevitability but a prudent governor on the pace of legal change." *State v. Jordan*, 303 Kan. 1017, 1021, 370 P.3d 417 (2016). While this court is not inexorably bound by its own precedent, we generally will follow the law of earlier cases unless clearly convinced that the rule "'was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent.'" *Sherman*, 305 Kan. at 108 (quoting *Simmons v. Porter*, 298 Kan. 299, 304, 312 P.3d 345 [2013]). In this case, we are clearly convinced that we erred in *Stanfield* and *Rhoten*. Based on our analysis above, which is grounded in the United States Supreme Court's analysis in *Semtek*, we correct our previous error and now hold that Kansas preclusion law applies under these facts.

*Overview of Kansas res judicata law*

Although the terms res judicata and claim preclusion often are used interchangeably, res judicata encompasses two distinct doctrines. The first doctrine is issue preclusion, also known as collateral estoppel, and it precludes a party from relitigating an issue actually decided in a prior case and necessary to the judgment. The second is claim preclusion, sometimes called res judicata, which prevents parties from

relitigating the same claim or cause of action even if certain issues were not litigated in the prior action. *In re Tax Appeal of Fleet*, 293 Kan. 768, 777, 272 P.3d 583 (2012).

Under Kansas law, claim preclusion consists of four elements: (1) same cause of action or claim, (2) same parties, (3) claims in the current case were or could have been raised in the prior action, and (4) final judgment on the merits of the prior action. 293 Kan. at 777-78 (citing *Winston v. State Dept. of SRS*, 274 Kan. 396, 413, 49 P.3d 1274 [2002]). Claim preclusion acts as "a bar to a second action upon the same claim, demand or cause of action." *In re Estate of Reed*, 236 Kan. 514, 519, 693 P.2d 1156 (1985). The doctrine of claim preclusion is founded on the principle that the party, or some other person or entity with whom the party is in privity, has litigated, or had an opportunity to litigate, the same matter in a former action in a court of competent jurisdiction. 236 Kan. at 519 (citing *Penachio v. Walker*, 207 Kan. 54, 57, 483 P.2d 1119 [1971]). Res judicata applies "not only as to every question actually presented, considered and decided, but also to every question which might have been presented and decided." 236 Kan. at 519 (citing *Hutchinson Nat'l Bank & Trust Co. v. English*, 209 Kan. 127, 130, 495 P.2d 1011 [1972]). It "prevents the splitting of a single cause of action or claim into two or more suits [and] it requires that all the grounds or theories upon which a cause of action or claim is founded be asserted in one action or they will be barred in any subsequent action." 236 Kan. at 519 (citing *Parsons Mobile Products, Inc. v. Remmert*, 216 Kan. 138, 140, 531 P.2d 435 [1975]).

We have described the rationale behind the doctrine as "one of public policy. It is to the interest of the state that there be an end to litigation and an end to the hardship on a party being vexed more than once for the same cause." 236 Kan. at 519 (citing *Wells v. Ross*, 204 Kan. 676, 678, 465 P.2d 966 [1970]). Nevertheless, we have emphasized that courts applying res judicata principles must employ a flexible, common-sense construction that recognizes the reality of a given situation in order to sustain its primary

goals, which are rooted in the requirements of justice and sound public policy. 236 Kan. at 519 ("This rule is one of public policy . . . . The doctrine of res judicata is, therefore, to be given a liberal application but not applied so rigidly as to defeat the ends of justice."); *Wells*, 204 Kan. at 678 (the doctrine must "be given a liberal application but not applied so rigidly as to defeat the ends of justice"); *Swigart v. Knox*, 165 Kan. 410, 423, 196 P.2d 246 (1948) (Cowan, J., dissenting) ("The application of the doctrine of res judicata is not inflexible. It is a rule of convenience and necessity but, like all such rules, is not to be applied so rigidly as to defeat the ends of justice.").

Our most recent pronouncement on this issue reiterates the importance of giving the doctrine a flexible, common-sense construction:

> "When applying the rule, Kansas courts must be mindful of the equitable principles animating the doctrine. Thus, courts must consider the substance of both the first and subsequent action and not merely their procedural form. See *Comm'rs of Wilson Co.* [*v. McIntosh*], 30 Kan. [234,] 238, 1 P. 572 [(1883)] ('We think there is a growing disposition to enlarge the scope of the doctrine of res judicata, and to place more regard on the substance of the decision than on the form of the proceedings.'). The doctrine may be liberally applied, but it requires a flexible and common-sense construction in order to vindicate its fundamental goals which are embedded in the requirements of justice and sound public policy. [Citations omitted.] This framework neither favors nor disfavors the application of the rule in any particular case. It merely requires that before the doctrine is either invoked or rejected, a court must conduct a case-by-case analysis that moves beyond a rigid and technical application to consider the fundamental purposes of the rule in light of the real substance of the case at hand." *Cain*, 302 Kan. at 434-35.

See also *Bogguess v. State*, 306 Kan. 574, 580, 395 P.3d 447 (2017) (citing above *Cain* analysis in determining whether court should apply res judicata to preclude consideration of merits of subsequent claim); *Steckline Communications, Inc. v. Journal Broadcast Group of KS, Inc.*, 305 Kan. 761, 770, 388 P.3d 84 (2017) (citing *Cain* to hold that courts

15

should be cognizant of policies animating res judicata doctrine and abstain from applying it in formulaic manner).

Our holding in *Jackson Trak* is consistent with these principles. In that case, the plaintiff filed an action in Phillips County District Court for possession of the defendant's equipment. Before receiving judicial approval, the plaintiff seized the defendant's equipment. The defendant then filed an application for mandatory injunction and replevin of property but specifically reserved the right to determine the issue of defective work in an arbitration proceeding. Although the district court found the plaintiff followed the contractual procedure when seizing the property, it declined to determine any issues that were subject to arbitration under the contracts. The defendant then initiated a request for arbitration. After the arbitrators were selected, the plaintiff objected to the arbitrators' power to award damages for "conversion" of the defendant's equipment because the district court already had decided that issue. The arbitrators overruled the objection and found for the defendant on all issues and awarded damages.

The defendant later sought confirmation of the arbitration award in the Sedgwick County District Court. The plaintiff objected to the defendant's motion and moved to vacate the award, but the district court affirmed the arbitration award. The plaintiff appealed the confirmation order, claiming the arbitrators lacked jurisdiction to award damages for the seizure of the equipment based on res judicata. We ultimately affirmed the Sedgwick County District Court's decision, finding that res judicata did not apply:

> "We note, however, that *the doctrine of res judicata is held not to apply to issues raised in the previous case which were not decided by the court or jury*. Hence, the doctrine of res judicata does not preclude relitigation of an issue raised by the pleadings in the prior action, but not considered either by stipulation of the parties or otherwise. More importantly, *a judgment is not res judicata as to any matters which a court expressly refused to determine*, and which it reserved for future consideration, or which it

16

directed to be litigated in another forum or in another action." (Emphases added.) 242 Kan. at 691.

In *Stanfield* and *Rhoten*, however, we abandoned—without any discussion of—the res judicata principles set out in *Jackson Trak*. For the first time, we used the federal transactional approach, adopted by the Tenth Circuit as set forth in the Restatement (Second) of Judgments §§ 24 and 25, to determine a claim preclusion issue. *Stanfield*, 263 Kan. at 401 (recognizing the Tenth Circuit has adopted the transactional approach); *Rhoten*, 290 Kan. at 109-10 (same). A review of our analysis in both *Stanfield* and *Rhoten* suggests that we used the Tenth Circuit's transactional approach because we believed the footnote in the United States Supreme Court's opinion in *Heck* required us to use it. *Stanfield*, 263 Kan. at 396 (quoting *Heck*, 512 U.S. at 488 n.9 ["[s]tate courts are bound to apply federal rules in determining the preclusive effect of federal-court decisions *on issues of federal law*"]); *Rhoten*, 290 Kan. at 106 (same). But as explained above, we failed to notice the limitation set forth in italics:  that the rule announced in *Heck* applied only to federal-question cases. As also explained above, we now rely on the post-*Stanfield* analysis in *Semtek* to conclude that, like preclusion issues presented in diversity jurisdiction cases, federal common law requires us to apply our own state law when a federal court has declined to exercise supplemental jurisdiction over a state law claim.

Although it is not clear whether it played a part in the decision to apply the transactional approach adopted by the Tenth Circuit, we summarily stated in both *Stanfield* and *Rhoten* that state res judicata principles do not differ significantly from the federal transaction approach. *Stanfield*, 263 Kan. at 396 (quoting Restatement [Second] of Judgments § 87, Comment *a*, p. 315 ["(T)here (is) little difference in the doctrine of res judicata as expounded in state and federal courts . . . so that it is usually a moot question whether the effect of a federal judgment is determined by federal law or state law."]); *Rhoten*, 290 Kan. at 106 (same). Beyond summarily referencing the Restatement

17

(Second) of Judgments § 87, we provided no support in either *Stanfield* or *Rhoten* for the proposition that state law and federal law on res judicata are essentially the same.

But they are not essentially the same. Kansas courts apply a flexible and common-sense construction of res judicata that considers not just the procedural posture but the substance of both the first and subsequent action. In *Jackson Trak*, we explained the nuanced application of res judicata required when some claims for relief have been dismissed for lack of jurisdiction and others have been decided on the merits. 242 Kan. at 690-91. Unlike Kansas common law, the federal transactional approach "focuses on the facts underlying the separate legal theories, and a 'claim arising from the same "transaction or series of connected transactions" as a previous suit, which concluded in a valid and final judgment, will be precluded.'" *Rhoten*, 290 Kan. at 109-110 (citing *Hatch v. Boulder Town Council*, 471 F.3d 1142 [10th Cir. 2006] [quoting Restatement (Second) of Judgments § 24]). Federal courts examine whether the facts are related in time, space, origin, or motivation and whether they would form a convenient trial unit. See also *Stanfield*, 263 Kan. at 401 (citing *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1236-37 [10th Cir. 1992]; *Lowell Staats Min. Co. v. Philadelphia Elec. Co.*, 878 F.2d 1271, 1274 [10th Cir. 1989] ["We have adopted the transactional approach of the Restatement (Second) of Judgments . . . to determine what is a single 'cause of action.'"]).

Simply put, the formulaic and rigid transactional approach adopted by the Tenth Circuit from the Restatement conflicts with well-established Kansas principles of res judicata that have developed in our common law and specifically conflict with application of those principles in *Jackson Trak*, where we explained the nuanced application of res judicata required when some claims for relief have been dismissed for lack of jurisdiction and others have been decided on the merits. 242 Kan. at 690-91. Given this conflict, we disapprove of any language in our prior caselaw stating that Kansas and federal res judicata law are indistinguishable.

18

*Application of Kansas res judicata law*

We have determined Kansas claim preclusion law applies. We have reviewed the development of the doctrine in our caselaw, which requires us to employ a flexible, common-sense construction grounded in justice and public policy. We now apply Kansas law to the facts presented here. See *Cain*, 302 Kan. at 434 (stating elements of claim preclusion as [1] same cause of action or claim; [2] same parties; [3] claims in the current case were or could have been raised in the prior action; and [4] final judgment on the merits of the prior action).

In Kansas, the claim or cause of action is defined in terms of the factual circumstances of the controversy rather than the legal theory or remedial statute on which the suit is grounded. See *Wells*, 204 Kan. at 678-79; see also *Schmeck v. City of Shawnee*, 231 Kan. 588, 590, 647 P.2d 1263 (1982) ("'"cause of action" is the concurrence of the facts giving rise to an enforceable claim'"); *Burnison v. Fry*, 199 Kan. 277, 281, 428 P.2d 809 (1967) (same); *Peterson v. Bachar*, 193 Kan. 161, 167, 392 P.2d 853 (1964) (same); *Shirk v. Shirk*, 186 Kan. 32, 36, 348 P.2d 840 (1960) (same); *Foster v. Humburg*, 180 Kan. 64, 67, 299 P.2d 46 (1956) (same).

Using this definition, we first must decide whether Herington's current lawsuit in state court alleging state law tort claims arises out of the same factual circumstances as the federal lawsuit alleging civil rights violations. We find that they do. Both claims allege Williamson engaged in wrongful conduct when he fatally shot Lanning after a high-speed car chase and foot pursuit. As to the second and third elements of claim preclusion, we also find that both lawsuits involve the same parties and that the state law tort claims in the current case were raised in the federal court case. But the fourth element—a final judgment on the merits—has not been met here.

19

The federal court could have exercised supplemental jurisdiction over Herington's state law claims because they were filed in conjunction with Herington's federal question claims. Supplemental jurisdiction promotes judicial efficiency and fairness to the parties by allowing related federal and state claims to be resolved in a single action. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966). But the decision to exercise supplemental jurisdiction rests in the federal court's discretion. See *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006) (when a federal court dismisses federal claims, it "generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims"); *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 349, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988) (recognizing "a distinction between the power of a federal court to hear state-law claims and the discretionary exercise of that power"). When deciding whether to exercise supplemental jurisdiction, a federal court considers "the values of judicial economy, convenience, fairness, and comity." 484 U.S. at 349; see *Wittner v. Banner Health*, 720 F.3d 770, 781 (10th Cir. 2013) ("[W]e have said the court should consider retaining state claims when, 'given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.'").

A federal court may decline to exercise supplemental jurisdiction in certain instances, including when the court has dismissed all the claims that initially supplied federal jurisdiction. See 28 U.S.C. § 1367(c)(3). Under these circumstances, federal courts are often cautious about exercising federal jurisdiction over claims grounded in state law. *Cohill*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."); *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir.

2011) ("'When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.'") (quoting *Smith v. City of Enid*, 149 F.3d 1151, 1156 [10th Cir. 1998]). Thus, federal courts may choose to dismiss without prejudice any remaining state law claims, leaving them to be refiled in state court. See *United Mine Workers*, 383 U.S. at 726-27 ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, . . . the state claims may be dismissed without prejudice and left for resolution to state tribunals."); *Gold v. Local 7 United Food & Commercial Workers Union*, 159 F.3d 1307, 1311 (10th Cir. 1998) (when federal court declines supplemental jurisdiction under 28 U.S.C. § 1367, "[t]he proper course of conduct . . . is to dismiss the state law claims without prejudice, in order to permit them to be brought in state court"), *overruled on other grounds by Styskal v. Weld County Comm'rs*, 365 F.3d 855 (10th Cir. 2004). A federal court's dismissal of state law claims will generally not operate to bar a plaintiff from refiling the claims in state court. See 46 Am. Jur. 2d, Judgments § 527 ("The inclusion of the term 'without prejudice' in a judgment of dismissal ordinarily indicates the absence of a decision on the merits, leaving the parties free to litigate the matter in a subsequent action."); 13D Wright, Miller & Cooper, Federal Practice and Procedure:  Jurisdiction § 3567.3 (3d ed. 2021) ("[W]hen a court declines supplemental jurisdiction in a case filed initially in federal court, it should dismiss the state-law claims without prejudice . . . . This course permits the plaintiff to refile in state court."); 18 Federal Practice and Procedure:  Jurisdiction § 4412 (3d ed. 2021) ("[N]o penalty should be inflicted if a deliberate effort to combine [all parts of a single claim or cause of action] has been expressly rejected."); 18A Federal Practice and Procedure: Jurisdiction § 4436 (3d ed. 2021) ("Discretionary refusal to exercise supplemental jurisdiction likewise does not preclude a subsequent action on state-law claims in a state court.").

Where, as here, a federal court declines to exercise supplemental jurisdiction over state law claims and dismisses those claims without prejudice, we hold there has been no final judgment on those state law claims, and the Kansas common law doctrine of res judicata does not preclude a litigant from bringing those claims in state court. Our holding is consistent with the federal cases cited in the preceding paragraph, which recognize the caution utilized by federal courts to exercise federal jurisdiction over state law claims. And just as important, our holding is consistent with well-established Kansas common law rules. See *Jackson Trak*, 242 Kan. at 690-91 (relying on Kansas common law principles to hold that a judgment is not res judicata as to matters which a court expressly refused to determine and reserved for future consideration).

Accordingly, we reverse the decisions of the Court of Appeals and the district court and remand the case to the district court with directions to address the merits of Herington's state law claims.